UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARITZA PINEL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AURORA LOAN SERVICES, LLC; and DOES 1-25, inclusive,<br><br>Defendants. | Case No: C 10-03118 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Dkt. 25, 39 |

Plaintiff Maritza Pinel ("Plaintiff") filed the instant class action on behalf of herself and all others similarly situated to challenge the allegedly unfair and unlawful business practices of Defendant Aurora Loan Services, LLC ("Aurora") with respect to its use of mortgage "Workout Agreements." The Court has subject matter jurisdiction, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

The parties are presently before the Court on Aurora's Motion to Dismiss Plaintiff's First Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 25. Having read and considered the papers filed in connection with this matter, and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).

I. **BACKGROUND**

   A. **FACTUAL SUMMARY**

The following facts are based on the allegations in the First Amended Complaint ("FAC"), which are taken as true for the purposes of the instant motion. Plaintiff is the owner of residential property located at 220 Valley Oak Lane, in Vallejo, California ("the Property"). FAC ¶ 32. Defendant Aurora serviced the loan. Id. In 2009, Plaintiff fell behind on her mortgage payments. Id. As a result, on June 5, 2009, Cal-Western Reconveyance Corporation ("Cal-Western") recorded a Notice of Default against the property, stating that the default amount was $7,464.20. Def.'s Req. for Jud. Not. Ex. A, Dkt. 26. Cal-Western recorded a Notice of Trustee's Sale on October 19, 2009, setting November 5, 2009, as the date of the non-judicial foreclosure sale. Id. Ex. B.

In an effort to avoid foreclosure, Plaintiff sought a loan modification from Aurora to lower her monthly payments. FAC ¶ 33. On or about October 29, 2009, Aurora provided Plaintiff with a Workout Agreement, which required her to make six monthly payments of $1,625. Id. & Ex. A. In turn, Aurora agreed to "forebear from exercising any or all of its rights and remedies now existing or arising during the term of this Agreement under the Loan Documents[.]" Id. Ex. A ¶ 3. Notably, the agreement states that Plaintiff and Aurora agree that Plaintiff has defaulted on her mortgage, but that "Customer has requested and that Lender has agreed to allow Customer to repay the Arrearage pursuant to a loan work-out arrangement on the terms set forth herein." FAC Ex. A, Bates No. AURORA 0000151.[1]

Attached to the Workout Agreement is a document styled as "Attachment A—Stipulated Payments," which sets forth Plaintiff's payment obligations. Id. Bates No. AURORA 000157, 0000148. The Attachment begins with the following:

---

[1] The "Arrearage" is specified as the sum of $13,755.30, of which $10,682.46 represents past due payments. FAC Ex. A, Bates No. AURORA 0000150.

> <u>For purposes of repayment of the Arrearage</u>, Customer shall pay a stipulated payment of $1625 (the "First Plan payment"), on or before 11/15/2009.  Thereafter, Customer shall pay five (5) consecutive stipulated monthly payments each in the amount of $1625 00 [sic] on or before the 15th day of each month … commencing 12/15/2009 and continuing through and including 04/15/2010…..

<u>Id.</u>  Despite the stated purpose of "repayment of the Arrearage," the final paragraph of the Attachment contains the ostensibly contradictory statement that:  "The aggregate Plan payment will be insufficient to pay the Arrearage.  At the Expiration Date, a portion of the Arrearage will still be outstanding."  <u>Id.</u> Bates No. 0000148.  The Attachment further states that after all of the Plan payments have been made, the Customer must "cure the Arrearage through a full reinstatement, payment in full, loan modification agreement or other loan workout option that Lender may offer…."  <u>Id.</u>

Plaintiff timely made all of the requisite payments due under the Workout Agreement, plus an extra payment in the amount of $1,625.00 in April 2010.  <u>Id.</u> ¶¶ 33, 34.  While Plaintiff was making payments under the Workout Agreement, the foreclosure sale was postponed at least four times.  <u>Id.</u> ¶ 35.  The last postponement was made on April 9, 2010, at which time Aurora reset the trustee's sale to May 13, 2010.  <u>Id.</u>  Aurora postponed these dates "without notice and without [Plaintiff]'s mutual consent."  <u>Id.</u>  On April 26, 2010, Aurora denied Plaintiff's pending request for a loan modification, notwithstanding her timely performance under the Workout Agreement.  <u>Id.</u> ¶ 36.  Unbeknownst to Plaintiff, the next day, on April 27, 2010, Aurora lifted the foreclosure hold, clearing the way for the trustee's sale to proceed.  <u>Id.</u>

Although Aurora had denied Plaintiff's request for a loan modification, it continued its attempts to extract additional payments from her.  <u>Id.</u> ¶ 37.  During a telephone call on April 29, 2010, Aurora advised Plaintiff to send additional financial documents and a payment of $1,781.41.  <u>Id.</u>  The $1,781.41 payment would have brought Plaintiff's total payments to $13,160.41—an amount only $594.89 short of curing her total Arrearage under the Workout Agreement.  <u>Id.</u> ¶ 38.  On May 14, 2009, Plaintiff tendered payment of $1,781.41 to Aurora.  <u>Id.</u> ¶ 40.  Plaintiff was unaware that Aurora had purchased the

Property for $204,000 at the trustee's sale conducted the previous day on May 13, 2010. Id. ¶ 40. Plaintiff did not receive notice of the sale or an opportunity to cure the Arrearage. Id.

### B. PROCEDURAL HISTORY

On June 10, 2010, Plaintiff filed the instant action in San Mateo County Superior Court. Notice of Removal ¶ 1, Dkt. 1. On July 16, 2010, Aurora removed the case to this Court under CAFA, and subsequently filed a motion to dismiss. Dkt. 1, 13. The parties subsequently stipulated to Plaintiff's filing of an amended complaint. Dkt. 22, 24. The FAC alleges five state law causes of action for: (1) violation of the California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof Code § 17200 et seq.; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) unjust enrichment; and (5) declaratory relief. FAC ¶¶ 14-19.

Plaintiff alleges that Aurora offers Workout Agreements to financially distressed borrowers as a means of bringing their loans current while they are being considered for a loan modification. However, the aggregate amount of Plan Payments due under the Workout Agreement is intentionally insufficient to satisfy the arrearage. Thus, after collecting all of the Plan Payments, Aurora initiates loan foreclosures without notice to borrowers and without providing them an opportunity to cure any remaining arrearage and avoid foreclosure. Plaintiff alleges that Aurora utilizes its Workout Agreements as a means of extracting further payments from borrowers under the false premise of helping them to avoid foreclosure. Aurora now moves to dismiss all claims alleged in the FAC. Dkt. 25, 26. The motion has been fully briefed and is ripe for adjudication.[2]

### II. LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

---

[2] After the close of briefing, Plaintiff submitted a motion for leave to file supplemental authority. Dkt. 39. Because the Court does not refer to the supplemental authority in its ruling, the request is denied as moot.

a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In deciding a Rule 12(b)(6) motion, the court must generally "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). The allegations must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted). Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88 (9th Cir. 2002).

**III.  DISCUSSION**

    **A.  UCL**

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009). The FAC alleges claims under each prong. FAC ¶¶ 56-62. In its motion, however, Aurora does not separately address each aspect of Plaintiff's UCL claim. Rather, Aurora generally contends that Plaintiff's UCL claim is based on two aspects of the Workout Agreement, i.e., the lack of an opportunity to cure the loan delinquency and the failure to issue a new notice of sale—and challenges Plaintiff's UCL claim on that basis. Nonetheless, because each prong of the UCL entails a separate and distinct legal analysis, the Court discusses Aurora's arguments in that manner.

        **1.  Unlawful**

"An 'unlawful' business practice or act within the meaning of the UCL 'is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." People ex rel. Harris v. Pac Anchor Transp., Inc., 195 Cal.App.4th 765, 773 (2011)

(quoting Bernardo v. Planned Parenthood Federation of Am., 115 Cal.App.4th 322, 351-352 (2004). In her FAC, Plaintiff alleges that Aurora acted unlawfully by: (a) inserting unconscionable terms in its Workout Agreements, in violation of California Civil Code § 1670.5; (b) initiating foreclosure without notice and an opportunity to cure in violation of Civil Code § 2924c(e); and (c) engaging in conduct to cause the failure of consideration with respect to the Workout Agreement, in violation of Civil Code § 1689(a)(2). FAC ¶ 58.

*a)     Unconscionability*

Plaintiff alleges Aurora's Workout Agreements contain unconscionable terms, contrary to the provisions of California Civil Code § 1670.5(a).[3] "Under California law, a contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable." Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976, 981-82 (9th Cir. 2007). The procedural element focuses on oppression and surprise due to unequal bargaining power, while the substantive element is satisfied where the results are overly harsh or one-sided. Discover Bank v. Superior Court, 36 Cal.4th 148, 160 (2005). The procedural and substantive elements operate on a sliding scale where a strong showing of one permits a lesser showing of the other. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 114 (2000). Nonetheless, both elements must be present in order for a provision to be deemed unconscionable. Id.

In her FAC, Plaintiff alleges that the Workout Agreements are both procedurally and substantively unconscionable. FAC ¶¶ 14-29. Among other things, she avers that through these agreements, Aurora systematically: (1) fails to withdraw foreclosure proceedings against borrowers, even though they are making payments under their agreement; (2) creates payment plans whereby the aggregate payments are insufficient to cure the borrower's deficiencies; and (3) initiates foreclosures with no notice and opportunity for the

---

[3] Section 1670.5(a) provides that: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

borrower to cure the alleged default.  Id. ¶ 18.  For its part, Aurora's motion does not address the sufficiency of Plaintiffs' allegations in terms of procedural or substantive unconscionability.  Instead, Aurora contends that it had no obligation to provide her with a loan modification and that it was legally justified to proceed with the foreclosure upon Plaintiff's default.   Def.'s Mot. at 8; Def.'s Reply at 3.  Aurora's argument misses the point.  The issue is not whether Aurora had any obligation to provide a loan modification; rather, Plaintiff's contention is that Aurora acted unconscionably by collecting payments from distressed borrowers under its Workout Agreements and then foreclosing on distressed borrowers' homes without notice and opportunity to cure any default.  Aurora's motion fails to confront this theory of liability.

As an ancillary matter, Aurora also contends that unconscionability "is a defense to enforcement of the workout agreement," and that it is "not a basis for affirmative cause of action under section 1670.5." Def.'s Mot. at 8 n.2.  Aurora ignores that Plaintiff is not bringing her claims directly under § 1670.5, but rather, is relying on Aurora's alleged statutory violation as the "unlawful" conduct that forms the basis of her UCL claim.  See Durell v. Sharp Healthcare, 183 Cal.App.4th 1350, 1361 (2010) ("Virtually any law—federal, state or local—can serve as a predicate for an action under Business and Professions Code section 17200.") (internal quotations and citations omitted).  As such, courts have recognized that a claim of unconscionablity may be asserted through a UCL claim.  See Zanze v. Snelling Servs., LLC, 2011 WL 263736, at *2 (9th Cir. Jan. 28, 2011) ("Zanze's allegation that the forfeiture clauses were unconscionable provides an adequate basis for an unfair practices claim under the UCL."); Util. Consumers' Action Network v. Sprint Solutions, Inc., No. C07-CV-2231-W (RJB), 2008 WL 1946859, at *2 (S.D. Cal. Apr. 25, 2008) (finding that claim of unconscionability under § 1670.5(a) could form basis of UCL claim).  The Court thus declines to dismiss Plaintiff's claim under the unlawful prong of the UCL insofar as it is predicated on a claim that the Workout Agreement includes unconscionable terms.

        *b)*      *Opportunity to Cure*

Plaintiff's second claim of unlawful conduct is based on the contention that Aurora initiated foreclosure "without notice and without providing an opportunity to cure, in violation of Civil Code § 2924c(e)[.]" FAC ¶ 58(b). In California, the foreclosure process commences with the recording of a notice of default. Cal. Civ. Code § 2924(a)(1). "The debtor then has a three-month reinstatement period to pay the balance due and reinstate the terms of the loan." Gor-Mey West, Inc., 175 Cal.App.3d 608, 614 (1985). In the event the loan is not reinstated, the trustee may record a notice of sale. Id.; Cal. Civ. Code §§ 2924(a)(2). The notice of sale cannot be recorded less than twenty days before the sale, and must, inter alia, describe the property to be sold, contain a statement of the total amount of the unpaid balance of the mortgage, and identify the original trustor and the trustee or other person conducting the sale. Cal. Civ. Code § 2924f(b)(1). The purpose of these requirements is to provide a clear statement of the default to enable the defaulting party to know what he or she has to do to cure the default and avoid foreclosure. See Ung v. Koehler, 135 Cal.App.4th 186, 202 (2005).

Borrowers have a right to reinstate their loan by paying delinquencies and specified costs "at any time ... until five business days prior to the date of sale set forth in the initial recorded notice of sale." Cal. Civ. Code § 2924c(e). If the sale is postponed, the time-period for seeking reinstatement is extended accordingly:

> In the event the sale does not take place on the date set forth in the initial recorded notice of sale or a subsequent recorded notice of sale is required to be given, <u>the right of reinstatement shall be revived as of the date of recordation of the subsequent notice of sale, and shall continue from that date until five business days prior to the date of sale set forth in the subsequently recorded notice of sale</u>.
>
> In the event the date of sale is postponed on the date of sale set forth in either an initial or any subsequent notice of sale, <u>or is postponed on the date declared for sale at an immediately preceding postponement of sale</u>, and, the postponement is for a period which exceeds five business days from the date set forth in the notice of sale, or declared at the time of postponement, then the right of reinstatement is revived as of the date of postponement and shall continue from that date until five

> business days prior to the date of sale declared at the time of the postponement.

Id. (emphasis added).[4]

The sale and postponement of a scheduled non-judicial foreclosure sale are governed by § 2924g. Banc of Am. Leasing & Capital, LLC v. 3 Arch Trustee Servs., Inc., 180 Cal.App.4th 1090, 1097 (2009). This section provides that: "The sale shall commence at the time and location specified in the notice of sale. Any postponement shall be announced at the time and location specified in the notice of sale for commencement of the sale or pursuant to paragraph (1) of subdivision (c)." Cal. Civ. Code § 2924g(a) (emphasis added). Under § 2924g(c)(1), a sale may be postponed unilaterally at the discretion of the trustee, or at the beneficiary's direction. Cal. Civ. Code § 2924g(c)(1); see Hatch v. Collins, 225 Cal. App.3d 1104, 1113 (1990). Alternatively, a trustee must postpone a scheduled sale based upon a court order, where the sale is stayed by operation of law or by mutual agreement, whether oral or in writing, between the relevant parties. Cal. Civ. Code § 2924g(c)(1)(A)-(C). The notice requirements applicable to a postponement are as follows:

> <u>The notice of each postponement and the reason therefor shall be given by public declaration by the trustee at the time and place last appointed for sale</u>. A public declaration of postponement shall also set forth the new date, time, and place of sale and the place of sale shall be the same place as originally fixed by the trustee for the sale. No other notice of postponement need be given.

Id. § 2924g(d) (emphasis added). Because nonjudicial foreclosure is a "drastic sanction" and a "draconian remedy," the applicable statutory requirements "must be strictly complied with[.]" Ung, 135 Cal.App.4th at 202-203 (internal quotation marks and citations omitted).

Aurora contends that it complied with its notice obligations under § 2924f(b)(1) in its original notice of sale recorded on October 19, 2009. Def.'s Mot. at 9; Def.'s Req. for

---

[4] "In addition to the right of reinstatement, the trustor also possesses an equity of redemption, which permits the trustor to pay all sums due prior to the sale of the property at foreclosure and thus avoid the sale." Moeller v. Lien, 25 Cal.App.4th 822, 830 (1994) (citing Cal. Civ. Code §§ 2903, 2905).

Jud. Not. Ex. B.  With regard to the issue of postponement of the scheduled sale date, Aurora argues that no new notice of sale was required, and that "an oral notice of postponement made at the time and place last appointed for sale" is sufficient to satisfy the requirements of § 2924g(d).  See Def.'s Reply at 5.  Aurora is partially correct.  A new notice of sale is not required unless the sale is postponed "for a period or periods totaling more than 365 days[.]"  Cal. Civ. Code § 2924g(c)(2).  Since the postponements in this case totaled less than 365 days, Aurora was not required to record a new notice of sale.

The above notwithstanding, the question remains as to what notice is required to postpone a non-judicial foreclosure sale where, as here, a new notice of sale is not required.  The relevant statute provides that "[t]he notice of each postponement and the reason therefor shall be given by public declaration by the trustee at the time and place last appointed for sale."  Id. § 2924g(d).  Aurora asserts that it complied with this requirement by providing oral notice of each postponement, and as such, it did not violate its notice obligations under § 2924g(d) or Plaintiff's right to cure under § 2924c(e).  Def.'s Mot. at 10.  However, the FAC alleges the precise opposite; namely, that the requisite notice was not provided, and that the postponements were made on dates that preceded the date scheduled for the sale, as opposed to "at the time and place last appointed for sale," as required by § 2924g(d).  See FAC ¶¶ 3, 20, 35, 36, 40.  Since the Court is required to accept Plaintiff's allegations as true on a Rule 12(b)(6) motion, the Court declines to dismiss Plaintiff's claim under the unlawful prong of the UCL insofar as it is predicated on a Aurora's violation of § 2924c(e).

                                                               *c)*       *Failure of Consideration*

The third aspect of Plaintiff's claim under the unlawful prong of the UCL is based on the allegation that Aurora "has engaged in conduct that results in the consideration for the obligation of the Plaintiff and the Class under the Workout Agreement to fail, in whole or in part, through the fault of Aurora in violation of Civil Code § 1689(b)(2), thus entitling Plaintiff and the Class [to] rescission."  FAC ¶ 58(c).  This code section provides that:  "A party to a contract may rescind the contract" where "the consideration for the obligation of

the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds." Cal. Civ. Code § 1689(b)(2).

In order to state a claim under the unlawful prong of the UCL, the conduct must be "forbidden by law." CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1107 (9th Cir. 2007) (internal quotation marks and citations omitted). Section 1689(b)(2) does not forbid any particular conduct. Rather, it simply provides for the remedy of rescission where the consideration for the contract fails as a whole or in a material way. The Court therefore finds that Plaintiff cannot state a claim for unlawful business practices under the UCL based on Aurora's alleged violation of Civil Code § 1689(b)(2). See Utility Consumers' Action Network, 2008 WL 1946859, at *2 (rejecting UCL claim based on California Civil Code § 1565, which sets forth elements of consent for purposes of a contract, because it "does not proscribe any behavior, and as such, cannot serve as the basis for an unlawful business act or practice."). Since no amendment would cure this deficiency, Plaintiff's unlawful practices claim based on § 1689(b)(2) is dismissed without leave to amend.

### 2. Unfair

A business practice that is not unlawful may nonetheless be actionable as an "unfair" business practice. People ex rel. Harris., 195 Cal.App.4th at 774. An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008). In her pleadings, Plaintiff alleges that Aurora acted unfairly by: (a) failing to withdraw foreclosure proceeding against her even though she made all Plan Payments under the Workout Agreement; (b) initiating foreclosure without notice and an opportunity to cure the arrearage or default; and (c) engaging in conduct that constitutes systematic breach of contract and breach of the implied covenant of good faith and fair dealing. FAC ¶ 59. Aside from Plaintiff's claim regarding notice and the opportunity to cure an arrearage or default, which is addressed above, Aurora does not specifically address the Plaintiff's

1  claims that Aurora engaged in conduct that is unfair under the UCL.  Thus, to the extent
2  that Aurora is seeking dismissal of Plaintiff's UCL claim based on unfair business
3  practices, the Courts finds that such request is unsupported, and therefore, lacks merit.  See
4  Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial
5  system relies on the advocates to inform the discussion and raise the issues to the court.").

### 3. Fraudulent

Conduct is considered "fraudulent" under the UCL if the conduct is "likely to deceive."  Morgan v. AT & T Wireless Servs., Inc., 177 Cal.App.4th 1235, 1254 (2009).  A claim under this prong of the UCL is based on the reasonable consumer standard, which requires the plaintiff to "show that members of the public are likely to be deceived."  Williams v. Gerber Prods. Co., 552 F.3d 934 (9th Cir. 2008) (internal quotation marks omitted).  Although a UCL claim need not plead the elements of common law fraudulent deception, it must allege the existence of a duty to disclose, Berryman v. Merit Prop. Mgmt., Inc., 152 Cal.App.4th 1544, 1557 (2007), as well as reliance, In re Tobacco II Cases, 46 Cal.4th 298, 328 (2009).  The fraudulent conduct must be alleged with particularity under Rule 9(b).  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires the plaintiff to allege "the who, what, when, where, and how" of the alleged fraudulent conduct, Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

Aurora posits that Plaintiff has failed to allege sufficient facts under Rule 9(b) regarding its representation that it would allow her to cure her deficiency.  Def.'s Mot. at 7.  The Court disagrees.  The FAC alleges that Aurora acted fraudulently by representing that it had agreed to allow the borrower to repay the arrearage under the Workout Agreement, collecting payments thereunder, and then initiating foreclosures without affording borrowers notice and an opportunity to cure the arrearage or default.  FAC ¶ 60.  The facts regarding the Workout Agreement, including the dates it was provided to Plaintiff and the dates of Aurora's allegedly fraudulent acts relating to such agreement, are set forth in detail

in the pleadings.  See FAC ¶¶ 11-13, 19-31, 33-42, 60 & Exs. A-C.  These allegations are sufficient to satisfy the purpose of Rule 9(b), which "is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations."  Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995).

### 4. Prudential Standing

As an alternative matter, Aurora contends that Plaintiff lacks standing to bring claims under the UCL.  The UCL permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ...."  Cal. Bus. & Prof. Code § 17200.  "Historically, the UCL authorized any person acting for the interests of the general public to sue for relief notwithstanding any lack of injury or damages."  Durell v. Sharp Healthcare, 183 Cal.App.4th 1350, 1359 (2010); see also Californians for Disability Rights v. Mervyn's, LLC, 39 Cal.4th 223, 227 (2006).  In 2004, however, California voters passed Proposition 64, which significantly limited private standing under the UCL.  In re Tobacco II Cases, 46 Cal.4th at 316.  "After Proposition 64, ... a private person has standing to sue only if he or she 'has suffered [an] injury in fact and has lost money or property as a result of such unfair competition.'"  Californians for Disability Rights, 39 Cal.4th at 227 (quoting Cal. Bus. & Prof. Code § 17204).  "The specific abuse of the UCL at which Proposition 64 was directed was its use by unscrupulous lawyers who exploited the generous standing requirement of the UCL to file "shakedown" suits to extort money from small businesses."  In re Tobacco II Cases, 46 Cal.4th at 316.  The "intent of California voters [in passing Proposition 64] was to limit such abuses by 'prohibiting private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact.'"  Id. at 316-17 (citations omitted).

In the class action context, standing under the UCL must be established as to the class representative.  In re Tobacco II Cases, 46 Cal.4th at 306.  Thus, the class representative must demonstrate that he or she "suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  A

plaintiff suffers an injury in fact for purposes of prudential standing under the UCL when he or she has: (1) expended money due to the defendant's acts of unfair competition (2) lost money or property or (3) been denied money to which he or she has a cognizable claim. Hall v. Time Inc., 158 Cal.App.4th 847, 854-55 (2008). The "injury in fact" and "lost money or property" requirements of § 17204 overlap. See Troyk v. Farmers Group, Inc., 171 Cal.App.4th 1305, 1348 (2009). The "as a result of" language of § 17204 imposes a causation requirement. See Rubio v. Capital One Bank, 613 F.3d 1195, 1204 (9th Cir. 2010) ("[the UCL] requires a 'causal connection' between [the defendant]'s alleged UCL violation and her injury in fact"); Troyk, 171 Cal.App.4th at 1348 ("the phrase 'as a result of' connotes an element of causation (i.e., [plaintiff] lost money because of [defendant]'s unfair competition").

Aurora contends that Plaintiff could not have suffered any actual harm as a result of the Workout Agreement, ostensibly because that agreement simply required her to pay amounts to which she was already contractually committed to repay under her mortgage. Def.'s Mot. at 12. This argument misses the point. According to Plaintiff, Aurora touts its Workout Agreements to financially distressed borrowers, such as herself, as a means of curing any loan defaults and avoiding foreclosure. FAC ¶ 13. However, Aurora allegedly structures its Workout Agreements in a manner such that the aggregate amount due under the payment plans is insufficient to cure the deficiency. Id. ¶ 18. In Plaintiff's case, Aurora foreclosed on her Property without affording her notice of the new date of the trustee sale and did not afford her an opportunity to cure her default, even though she had timely made all of the required payments under the Workout Agreement. Thus, not only has Plaintiff allegedly been deprived of the benefit of their agreement, she also lost her Property to foreclosure. These allegations are sufficient for purposes of prudential standing under the UCL. E.g., Lozano v. AT & T Wireless Servs, Inc., 504 F.3d 718 (9th Cir. 2007) (finding that injury under the UCL established where plaintiff "did not receive the full value of his contract"); Susilo v. Wells Fargo Bank, N.A., --- F.Supp.2d ----, 2011 WL 2471167, at *15 (C.D. Cal. June 21, 2011) (finding allegations that defendants foreclosed on plaintiff's

1 property unlawfully, without authority and through fraudulent misrepresentations, was
2 sufficient at the pleading state to establish that plaintiff suffered an injury in fact and a loss
3 of money or property under the UCL).

### B. BREACH OF CONTRACT

In her second cause of action for breach of contract, Plaintiff alleges that "[Aurora] breached its contract with Plaintiff and the Class by failing to allow Plaintiff and the Class to repay their remaining arrearage, and by initiating foreclosure without notice and without an opportunity to cure despite its promise of providing access to a cure method." FAC ¶ 66. As support for this claim, the FAC cites one of the recitals to the Workout Agreement, which expressly acknowledges that "Customer has requested and Lender has agreed to allow Customer to repay the Arrearage pursuant to a loan work-out arrangement on the terms set forth herein." FAC Ex. A at 2, Bates No. AURORA 000151 (emphasis added). In response, Aurora points out that the Workout Agreement is subject to the terms set forth in Attachment A to the agreement, which states that the payment plan, in fact, "will be insufficient to pay the Arrearage" and that "[a]t the Expiration Date, a portion of the Arrearage will still be outstanding." FAC Ex. A, Attachment A ¶ b, Bates No. AURORA 000148. Thus, according to Aurora, it had no contractual obligation to allow Plaintiff to repay her arrearage.

Under California law, a contract must be interpreted in a manner that gives effect to the mutual intent of the parties if that intent can be ascertained. Cal. Civ. Code § 1636. The whole of a contract must be construed together in order "to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Id. § 1641. "Courts must interpret contractual language in a manner [that] gives force and effect to every provision, and not in a way [that] renders some clauses nugatory, inoperative or meaningless." City of Atascdero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal.App.4th 445, 473 (1998). "If the contract language is clear and explicit, it governs." Foster-Gardner, Inc. v. National Union Fire Ins. Co., 18 Cal.4th 857, 868 (1998) (internal quotations and citation omitted). On the other hand, "[i]f an instrument is capable of two different reasonable interpretations,

- 15 -

the instrument is ambiguous." Harvey v. The Landing Homeowners Ass'n, 162 Cal.App.4th 809, 817 (2008).

Aurora contends that the only obligation it assumed under the Workout Agreement was to temporarily forebear from foreclosing on her Property. Such a determination cannot be made at this stage of the proceedings, however. Although it is true that Attachment A discloses that the "aggregate Plan payment will be insufficient to pay the Arrearage," Aurora never reconciles this provision with the recital that Aurora "has agreed to allow Customer to repay the Arrearage pursuant to a loan work-out arrangement[.]" Nor does Aurora explain the first clause in the Attachment, which specifies that the payment plan is being implemented "[f]or the purposes of repayment of the Arrearage[.]" Id. Bates No. 000157.[5] As set forth above, the Court is not at liberty to credit the provisions of the Workout Agreement that favor Aurora while ignoring those which do not. See Sunset Sec. Co. v. Coward-McCann, Inc., 47 Cal.2d 907, 911 (1957) ("It is beyond question that every provision of a contract should be examined to determine the meaning and intention of the parties.") (emphasis added). Given the apparent ambiguity created by the ostensibly contradictory provisions of the Workout Agreement, the viability of Plaintiff's breach of contract claim is not amenable to resolution at this stage of the litigation. See Consul Ltd. v. Solide Enters., Inc., 802 F.2d 1143, 1149 (9th Cir. 1986) (holding that district court erred in dismissing breach of contract claim where contract was ambiguous).

In its reply, Aurora argues that Newgent v. Wells Fargo Bank, N.A., No. 09cv1525 WQH (WMC), 2010 WL 761236 (S.D. Cal. Mar. 02, 2010) "is directly on point" and establishes that the lender's failed promise to delay the trustee's sale was not "detrimental" because the plaintiff was "already obligated to pay her mortgage." Id. at *6. To the extent that Newgent is "directly on point" as claimed, Aurora should have cited and discussed such case in its opening brief so that Plaintiff would have the opportunity to address the

---

[5] Indeed, the fact that Aurora styled the agreement as a "Workout Agreement" implies the intent to allow borrowers to resolve the default that led to the notice of sale in the first instance.

- 16 -

case in her opposition.  See In re Rains, 428 F.3d 893, 902 (9th Cir. 2005) (noting that a court need not consider new arguments first raised in a reply brief).  In any event, the Newgent court was addressing claims of equitable and promissory estoppel, as opposed to whether the plaintiff suffered actual damage under the UCL.  In addition, the case is further distinguishable in that it did not involve the scenario presented in this case, where the defendant has allegedly induced the borrower to enter into a multi-payment agreement based on representations or understandings that doing so would enable her to pay off her arrearage, reinstate her mortgage and avoid foreclosure.  Thus, the Court finds that Newgent is inapposite to this case, and denies Aurora's motion to dismiss Plaintiff's claim for breach of contract.

### C. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

The implied covenant of good faith and fair dealing provides that no party to a contract may do anything that would deprive another party of the benefits of the contract.  Foley v. Interactive Data Corp., 47 Cal.3d 654, 683-684 (1988).  Aurora contends that since Plaintiff has not alleged a viable contract claim, her third claim for breach of the implied covenant and good faith and fair dealing must fail as well.  Def.'s Mot. at 14.  As set forth above, the Plaintiff's second claim for breach of contract claim survives Aurora's motion to dismiss.  Consequently, Aurora's challenge to Plaintiff's third claim must fail as well.

### D. UNJUST ENRICHMENT

The elements of unjust enrichment are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another.  Peterson v. Cellco P'ship, 164 Cal.App.4th 1583, 1593 (2008). Under California law, unjust enrichment is an action in quasi-contract.  Paracor Fin. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996).  "However, as a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights."  Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc., 94 Cal.App.4th 151, 172 (2001).  Thus, to the extent that Plaintiff ultimately is able to prevail under a breach of contract theory, she will be precluded from simultaneously recovering under a theory of unjust enrichment.

Nonetheless, at the pleading stage, a plaintiff is entitled to plead inconsistent causes of action. See Fed. R. Civ. Pro. 8(e)(2); Oki Am., Inc. v. Microtech Int'l, Inc., 872 F.2d 312, 314 (9th Cir. 1989).  The Court therefore denies Aurora's motion to dismiss Plaintiff's claim for unjust enrichment.

### E.   DECLARATORY RELIEF

Plaintiff's final claim seeks a declaration of rights with respect to the legality and enforceability of Aurora's practices in connection with its Workout Agreements.  FAC ¶ 78; Pl.'s Opp'n 25.  Citing Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan, 150 Cal.App.4th 1487, 1497 (2007), Aurora contends that "Plaintiff's declaratory relief claim … fails because she seeks only to rectify alleged wrongs occurring in the past," and that such a claim "operates prospectively to declare future rights, rather than to redress past wrongs."  Def.'s Mot. at 15.  The propriety of granting declaratory relief in a diversity jurisdiction action, however, presents a procedural question, to which the court applies federal law.  Golden Eagle Ins. Co. v. Travelers Cos., 103 F.3d 750, 752 (9th Cir. 1996), overruled on other grounds by Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220 (9th Cir. 1998) (en banc); Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide:  Fed. Civ. P. Before Trial § 10.33.5 at 10-16 (TRG 2010).

The Declaratory Judgment Act ("DJA") states:  "In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Thus, under the DJA, the salient issues are (1) whether there is an actual case or controversy within its jurisdiction, and (2) if so, whether the court should exercise its jurisdiction by analyzing the factors set out in Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942), and its progeny.  Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005) (citation and internal quotation marks omitted).  Aurora's motion addresses neither of these inquiries, and the Court declines to do so sua sponte.  See Towers of Wash., 350 F.3d at 929.  Aurora's motion to dismiss Plaintiff's fifth claim for declaratory relief is therefore denied.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Aurora's motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion is GRANTED only with respect to Plaintiff's claim under the unlawful prong of the UCL to the extent it is based on Aurora's alleged violation of Civil Code § 1689(b)(2). Aurora's motion to dismiss is DENIED in all other respects.

2. Plaintiff's request for leave to file notice of supplemental authority is DENIED as moot.

3. The parties shall appear for a telephonic Case Management Conference on October 26, 2011 at 3:00 p.m. Prior to the date scheduled for the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement. Plaintiff is responsible for filing joint statement no less than seven (7) days prior to the conference date. The joint statement shall comply with the Standing Order for All Judges of the Northern District of California and the Standing Orders of this Court. Plaintiff is responsible for setting up the conference call. On the specified date and time, Plaintiff shall call (510) 637-3559 with all parties on the line.

4. Absent prior leave of Court, any additional motions and oppositions thereto shall be limited to fifteen (15) pages and replies are limited to ten (10) pages.

5. This Order terminates Docket 25 and 39.

IT IS SO ORDERED.

Dated: August 29, 2011

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge