DAVID B. BERGMAN (admitted *pro hac vice*)
david.bergman@aporter.com
IAN S. HOFFMAN (admitted *pro hac vice*)
ian.hoffman@aporter.com
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, D.C. 20004-1206
T: (202) 942-5000
F: (202) 942-5999

JOHN R. DANOS (SBN 210964)
john.danos@aporter.com
TIFFANY M. IKEDA
tiffany.ikeda@aporter.com (SBN 280083)
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5644
T: (213) 243-4000
F: (213) 243-4199

Attorneys for Defendant
AURORA LOAN SERVICES, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MAUDER and ALICE CHAO;<br>DEOGENESO and GLORINA PALUGOD;<br><br>and<br><br>MARITZA PINEL,<br><br>on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>AURORA LOAN SERVICES, LLC,<br><br>           Defendant. | Consolidated Case<br>No. CV 10-3118-SBA<br>No. CV 10-3383-SBA<br><br>**DEFENDANT AURORA LOAN SERVICES, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO QUASH SUBPOENAS DIRECTED AT COUNSEL AND COUNSEL'S FORMER EMPLOYEES AND FOR A PROTECTIVE ORDER**<br><br>Hearing Date:  November 6, 2012<br>Time: 1:00 p.m.<br>Courtroom: Courtroom 1, 4th Floor<br>Judge: Hon. Saundra B. Armstrong |

1    Defendant Aurora Loan Services, LLC ("Aurora") respectfully submits this memorandum of

2    points and authorities in opposition to Plaintiffs' Motion to Quash Subpoenas Directed at Counsel and

3    Counsel's Former Employees and for a Protective Order ("Plaintiffs' Motion").  Doc. # 22.

4                                **INTRODUCTION AND SUMMARY**

5    Aurora seeks to depose Andrew Oldham and two of his former colleagues because they are

6    important percipient fact witnesses.  They held direct, non-privileged discussions with Aurora ***pre-***

7    ***litigation***.  Aurora expressly advised them, in their capacity as representatives of the named plaintiffs,

8    that Aurora had denied the applications for loan modification and would proceed to foreclosure.  Their

9    testimony concerning these discussions with Aurora personnel is relevant -- indeed critical -- and plainly

10   non-privileged.

11   Plaintiffs' Motion to Quash is fundamentally flawed.  As a threshold matter, Plaintiffs Motion to

12   Quash is not timely.  On that basis alone, it should be denied.  On the merits, there is no basis to quash

13   the subpoenas.  Aurora does not seek any privileged information with respect to the depositions of Mr.

14   Oldham and two of his former employees, who represented most of the named Plaintiffs (Alice and

15   Mauder Chao [the "Chaos"] and Deogeneso and Glorina Palugod [the "Palugods"]) during the time

16   period for which the facts are in dispute.[1]  Mr. Oldham and his former employees are indisputably fact

17   witnesses with respect to their pre-litigation actions that are central to Plaintiffs' claims.  The alleged

18   wrongdoing at the center of Plaintiffs' claims is that Aurora supposedly failed to provide Plaintiffs an

19   "opportunity to cure" their default by not providing them notice that their loan modification requests had

20   been denied prior to foreclosure.  Consolidated Class Action Complaint ("Compl."), ¶ 4 ("Borrowers had

21   no opportunity to cure through reinstatement or pay-off of their loans ***because they were not told*** at least

22   five days before the [foreclosure] sale date that a modification or other workout plan was denied.")

23   (emphasis added).  Based on Aurora's records, such notice was in fact provided directly to Mr. Oldham

24   and his employees with respect to at least one of the named plaintiffs.[2]  Aurora is entitled to take Mr.

---

25   [1]    *See* Declaration of I. Hoffman, ¶¶ 2-3, Ex. A, Ex. B.  Notably, at the time of the denial of the

26   Palugods' modification request, the Law Office of Andrew Oldham ("Law Office") was the designated
     mailing address for all correspondence between Aurora and the Palugods, and Aurora's records show

27   that it sent numerous letters to the Law Office concerning the Palugods' loan.  *See id.* at ¶¶ 4-5, Ex. C,
     Ex. D.

28   [2]    *See* Declaration of I. Hoffman, ¶ 5, Ex. D.

1   Oldham's testimony as further proof that he received such notice on behalf of the Plaintiffs.  Plaintiffs

2   have made the supposed lack of notice the centerpiece of their claims, and the fact that Mr. Oldham put

3   himself in position to interact directly with Aurora -- by phone and correspondence -- makes him a fact

4   witness of great importance.

5        Beyond that, Mr. Oldham's Law Office made approximately ***forty-eight calls to Aurora*** -- at least

6   thirty-four of which were made by Mr. Oldham, Ms. Colon, or Ms. Sanchez -- to discuss the status of the

7   Chaos' and Palugods' loans, foreclosure, loan modification requests, and Workout Agreements.  Decl. of

8   I. Hoffman, ¶ 6.  None of these calls is privileged, and contrary to Plaintiffs' assertions, Aurora does not

9   have a recording of all of these calls.  *Id*.  Given that Plaintiffs claim that the Workout Agreement was

10  fraudulent, Aurora is entitled to discover what Plaintiffs' designated representatives at the time, in this

11  case Mr. Oldham and his employees, discussed with Aurora regarding the Workout Agreement.

12       Plaintiffs argue that the document requests contained in the subpoenas show that Aurora is trying

13  to obtain privileged information.  In fact, the document requests show just the opposite.  Three of the four

14  requests are specifically limited to communications with Aurora or other third parties, such as other

15  lenders, that cannot possibly be privileged; the fourth request seeks basic, non-privileged documents that

16  are plainly relevant such as workout agreements, applications for workout agreements, and other loan-

17  related documents.

18                              **ARGUMENT**

19  **I.    PLAINTIFFS' MOTION IS NOT TIMELY**

20       Federal Rule of Civil Procedure 45(c)(2) requires that objections to subpoenas be made within 14

21  days after the subpoena is served.  Plaintiffs admit that they did not file their Motion until twenty-two

22  days after service.  Pls.' Mot., at 2.[3]

23       Aware of their violation of Rule 45(c)(2), Plaintiffs contend that their Motion is timely under

24  Rule 45(c)(3), which requires that motions to quash be brought "on timely motion."  Plaintiffs are wrong.

25  "Rule 45(c)(2) implicitly requires that a motion to quash a subpoena be filed within fourteen days of

26

27  ───────────────
    [3]   Mr. Oldham was served with a subpoena duces tecum on September 5, 2012.  Plaintiffs moved to
28  quash on September 27, 2012, 22 days after service and 8 days after the deadline under the Federal
    Rules.

1   service, and the rule 45(c)(3) timeliness requirement appears to refer to that period.  The most reasonable

2   construction of the rule is to read the two sections together; thus, motions to quash must be filed within

3   fourteen days of service." *Tutor-Saliba Corp. v. U.S.*, 30 Fed. Cl. 155, 156 (Ct. of Fed. Cl. 1993); *see*

4   *also In re Ecam Publications, Inc.*, 131 B.R. 556, 558 (Bankr. S.D.N.Y. 1991) ("Rule 45(c)(3) . . . must

5   be read in conjunction with subsection (c)(2)(B) such that 'on timely motion' requires objections be

6   served according to the same rule [14 days] whether a subpoena requires production of documents or

7   depositions").

8          Although the untimely nature of objections may be excused "[i]n usual circumstances and for

9   good cause," Plaintiffs' list of seven excuses—which mostly amount to assertions that Plaintiffs' counsel

10  were busy with other aspects of *this* case—fails to meet this burden.  *Moon v. SCP Pool Corp.*, 232

11  F.R.D. 633, 636 (C.D. Cal. 2005).  Because Plaintiffs waived their objections by failing to comply with

12  the requirements of the Federal Rules of Civil Procedure, this Court should deny Plaintiffs' Motion.

13  **II.      A PROTECTIVE ORDER IS NOT WARRANTED**

14         Under Federal Rule of Civil Procedure 26(c), "a protective order should be granted when the

15  moving party establishes 'good cause' for the order and 'justice requires [a protective order] to protect a

16  party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .' " *Younger*

17  *Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 588 (C.D. Cal. 2007) .  "For good cause to exist, the party

18  seeking protection bears the burden of showing specific prejudice or harm will result if no protective

19  order is granted." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002).  "Broad

20  allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule

21  26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992), *cert. denied*, 506

22  U.S. 868 (1992).

23         Here, Plaintiffs fail to meet their burden of showing that "specific prejudice or harm" will result if

24  the motion for a protective order is denied.  Plaintiffs' generalized grievances allege that the subpoenas

25  are "improper" and "perceived as a mere ploy for harassment"; these allegations fail to articulate any

26  cognizable reason why this Court should grant a protective order under Rule 26(c).  *See Younger*, at 588

27  (denying protective order because the party seeking the protective order "has not met its burden to show

28  plaintiff's deposition of [deponent] is for harassment or that all of the information plaintiff seeks from

[deponent] is protected by the attorney-client privilege or work product doctrine.")

## III.    BECAUSE MR. OLDHAM AND HIS EMPLOYEES ARE FACT WITNESSES, PLAINTIFFS' MOTION SHOULD BE DENIED

"Neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence prohibit taking the deposition of an opposing party's attorney." *Am. Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 585 (S.D. Cal. 1995) (citation omitted). Indeed, "in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249 (D. Kan. 1995). That is the situation here: one of Plaintiffs' attorneys played a substantial and ongoing role in the underlying facts -- including his office placing some forty-eight (48) calls to Aurora before this litigation ever started.

Although Aurora believes that the more flexible Second Circuit test articulated in *In re Subpoena Issued to Dennis Friedman* should apply[4], the depositions of Mr. Oldham and his former employees are appropriate under any test—including the *Shelton* three-factor test advanced by Plaintiffs. Under *Shelton v. Am. Motors Corp.*, a party seeking to take the deposition of opposing counsel must show that: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." 805 F.2d 1323, 1328 (8th Cir. 1986) (internal citation omitted). Here, Mr. Oldham and his former employees possess unique information that is relevant and non-privileged and that goes to the heart of this case.

**First**, because Mr. Oldham and his former employees communicated directly with Aurora on behalf of the Chaos and Palugods, they possess material information that Aurora has no other means of obtaining. Among the materials and information requested, Aurora seeks information relating to the substance of non-privileged telephone conversations between the deponents and Aurora. Aurora also

---

[4]    *In re Subpoena Issued to Dennis Friedman* "requires the Court to take into consideration various factors, including the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted . . . Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered." 350 F.3d 65, 72 (2d Cir. 2003). Courts use the more flexible *Friedman* test where, as here, the attorney being deposed is a fact witness. *See, e.g., Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 588-89 (C.D. Cal. 2007).

- 4 -

seeks discovery of information relating to the procedures by which received mail is handled and documented by the Law Office.  Without these depositions, Aurora has no way of obtaining this information.  Here, Mr. Oldham and his former employees are the only persons who possess complete knowledge as to the substance of the communications with Aurora.  Plaintiffs wrongly suggest that Aurora can otherwise obtain this information by "searching . . . its own files of correspondence."  Pls.' Mot., at 7.  This is incorrect.  Mr. Oldham and his former employees possess key factual information regarding the chain of custody for documents sent from Aurora and received by Plaintiffs.  Finally, Plaintiffs' contention that discovery is unnecessary because Aurora recorded every telephone call is unfounded.  Pls.' Mot., at 6.  Although Aurora recorded many telephone conversations, Aurora has searched its records and is not in possession of a recording for every telephone call at issue in this case. Decl. of I. Hoffman,  ¶ 6.

**Second**, the proposed deponents are direct participants in oral and written communications between them and Aurora regarding the Chaos' and Palugods' requests for loan modifications.  Their testimony is highly relevant, as are the documents requested ("records . . . kept relating to oral or written communications with Aurora . . . including records that would indicate your receipt of letters sent to you by Aurora related to or concerning the Chaos and/or Palugods.")  Loeser Decl., Ex. A, ECF No. 123-1, at 6.  The Chaos and Palugods maintain that Aurora failed to notify them that their requests for loan modifications had been denied prior to foreclosure.  Loeser Decl., ECF No. 119, ¶ 3 ("The Chaos and Palugods will testify, consistent with the facts alleged in the CAC, that they did not receive any notice from Aurora that their requests for modification had been denied prior to foreclosure such that they would have had an opportunity to cure the default on their loans . . .").  Indeed, this claim of no notice is the central question presented in the complaint.

Moreover, there is little risk of encountering privilege and work-product issues.  The document requests and intended line of questioning at deposition are tailored to avoid trespass on any privilege. Aurora seeks only non-privileged information and documents that are crucial to its case and relate to communications between the Law Office and Aurora and Mr. Oldham and his former employees' pre-litigation involvement in the facts.  The attorney-client privilege and work-product doctrines do not protect the substance of non-privileged communications.  Here, the written correspondence and telephone

- 5 -

conversations at issue are not protected by any privilege.  Plaintiffs cannot claim that the communications between Mr. Oldham and Aurora or other third parties are privileged under California law.  Moreover, the risk of encountering privilege issues is further minimized in light of the fact that Mr. Oldham is an attorney and certainly "can, and no doubt will, invoke the attorney-client privilege with respect to improper questions." *Thomas v. Cate*, No. 1:05-cv-01198, 2010 WL 1343789, at *3 (E.D. Cal. Apr. 5, 2010) (finding that depositions of legal staff were appropriate).

**Third**, the depositions are appropriate because the information sought is crucial to Aurora's preparation of its case.  Plaintiffs, by making notice a fundamental issue in this case, cannot now claim that Aurora is not entitled to fully inquire into the extent such notice was provided to the named Plaintiffs.  Full knowledge regarding the circumstances of notice provided to the Law Office on behalf of the Chaos and Palugods is crucial to Aurora's preparation in this case.  Aurora has not taken the deposition of Mr. Oldham and his former employees before, and the information sought in the subpoenas is unique.  Aurora is unaware of any other witnesses with complete knowledge of (1) the communications between Mr. Oldham and numerous former employees of Aurora; and (2) the record-keeping process used by the Mr. Oldham's Law Office to track incoming correspondence.  For example, the Chaos and Palugods claims they did not receive notice that their loan modification requests were denied, but they may not be able to testify whether Mr. Oldham received notice on their behalf.

Because Aurora satisfies the three-part test under *Shelton*, Plaintiffs' Motion should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Quash and for a Protective Order and Plaintiffs' request for costs under Rule 45(c)(1).

Dated:  October 3, 2012

**ARNOLD & PORTER LLP**

By: /s/ John R. Danos
    JOHN R. DANOS

Attorneys for Defendant AURORA LOAN SERVICES, LLC