1  STEVE W. BERMAN (*Pro Hac Vice*)
   THOMAS E. LOESER (202724)
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   1918 Eighth Avenue, Suite 3300
3  Seattle, WA 98101
   Telephone: (206) 623-7292
4  Facsimile: (206) 623-0594
   steve@hbsslaw.com
5  toml@hbsslaw.com

6  ALI ABTAHI (224688)
   IDENE SAAM (258741)
7  ABTAHI LAW FIRM
   1528 S. El Camino Real, Suite 204
8  San Mateo, CA 94402
   Telephone: (650) 341-1300
9  Facsimile: (650-341-1303
   aabtahi@abtahilaw.com
10 isaam@abtahilaw.com

11 *Attorneys for Plaintiffs and the proposed Class*

12 [Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MAUDER and ALICE CHAO; DEOGENESO and GLORINA PALUGOD,<br><br>and<br><br>MARITZA PINEL,<br><br>on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AURORA LOAN SERVICES, LLC,<br><br>Defendant. | No. 10-cv-03118-SBA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENAS DIRECTED AT PLAINTIFFS' COUNSEL AND COUNSEL'S FORMER EMPLOYEES AND FOR A PROTECTIVE ORDER**<br><br>Date: November 6, 2012<br>[or October 9, 2012]<br>Time: 1:00 p.m.<br>Dept.: Courtroom 1, 4th Floor<br>Judge: Hon. Saundra B. Armstrong |

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
TABLE OF CONTENTS ................................................................................................................i

I. INTRODUCTION ...............................................................................................................1

II. ARGUMENT IN REPLY....................................................................................................2

    A. Plaintiffs' Motion to Quash is Timely................................................................2

    B. Even If the 14-Day Rule For Document Demands Does Apply, Plaintiffs Have Demonstrated "Unusual Circumstances and Good Cause" for Their Motion to Quash to Proceed ...............................................................................3

    C. Aurora Fails to Overcome the Presumption that Its Subpoenas of Opposing Counsel and his Former Employees are inappropriate and should be Quashed ..............................................................................................................4

III. CONCLUSION ....................................................................................................................8

## I. INTRODUCTION

Aurora's anemic opposition to Plaintiffs' Motion to Quash betrays that its true intent in seeking to depose Plaintiffs' counsel is to harass and annoy. Aurora first expends one-half page to claim *as a matter of settled law* that Plaintiffs' Motion to Quash under Fed. R. Civ. P. 45(c)(3) is untimely because it was not filed within the 14-day period after service *to object to a document production* under Rule 45(c)(2). As an initial matter, because Aurora *has not served 2 of its 3 subpoenas*, the deadline is obviously meaningless. But even for the one subpoena it has served, Aurora cites only a 1993 Court of Federal Claims decision and a 1991 New York Bankruptcy decision to support this proposition. Neither case is binding authority, and Aurora provides no analysis suggesting that these decisions should be more persuasive than the newer cases cited by Plaintiffs holding the 14-day limit under Rule 45(c)(2) does not apply to a motion to quash under Rule 45(c)(3). Even if the 14-day timeliness rule does apply, Plaintiffs have shown "unusual circumstances and good cause" for their motion to be permitted 22 days after Aurora served its subpoena on opposing counsel. Other than a single *ipse dixit* sentence, Aurora makes no attempt to show otherwise.

Aurora fares no better on the merits. The cases it cites for the standard to be applied on a motion to quash do not concern subpoenas directed at opposing counsel or are obviously distinguishable. Subpoenas on opposing counsel are presumptively inappropriate and the burden falls on the proponent to prove a crucial need that cannot be met any other way. Aurora's arguments fall far short of this burden. In fact, there were just two calls with Aurora involving Mr. Oldham, and both of them were recorded by Aurora. Aurora essentially ignores its burden and instead argues that because Plaintiffs' counsel's firm *could be deposed*, a motion to quash should be rejected. But that is not the law. Even the cases Aurora cites, when applied to the facts of this case, suggest the only appropriate response to Aurora's latest obstreperous and harassing discovery tactic is quashing its subpoenas of Plaintiffs' counsel and his employees and ordering Aurora to pay Plaintiffs' costs of this motion.

## II. ARGUMENT IN REPLY

### A. Plaintiffs' Motion to Quash is Timely

In a one-half page throw-away argument, Aurora states that Plaintiffs' Motion to Quash should be denied because it was filed 22 days after service of the subpoena at issue. This argument fails completely as to the subpoenas of the law firm employees, Ms. Colon and Ms. Sanchez, because Aurora has not served them. *See* Supplemental Declaration of Thomas E. Loeser in Support of Plaintiffs' Motion to Quash ("Supp. Loeser Decl."), ¶ 3. Even if the 14-day-from-service period of Rule 45(c)(2) applied – which it does not – that clock does not start to tick until a subpoena is actually served. *See* Fed. R. Civ. P. 45(c)(2)(B) ("14 days after *the subpoena is served*") (emphasis added). Thus Aurora cannot hide behind a supposed procedural defect and must show a crucial need for these depositions that cannot be met any other way.

As to the subpoena of Plaintiffs' counsel, Mr. Oldham, Aurora claims that a motion to quash not filed within 14 days of service is untimely. It cites a single Court of Federal Claims case from 1993 and a single New York bankruptcy case from 1991 to state unequivocally, "Plaintiffs are wrong." Opp. at 2. But these cases are not binding authority and Aurora expends not a single word in an attempt to explain *why* the Court should follow these cases instead of the more recent cases cited by Plaintiffs, which consider the contrary authority cited by Aurora, yet hold the 14-day rule does not apply to a motion to quash under Rule 45(c)(3).[1] Plaintiffs also analyzed the Rule itself and its amendments, arguments to which Aurora has not made any response. Finally, in this case, where no documents are actually at issue because Plaintiffs have already provided to Aurora all non-privileged documents relating to their loans that were in their lawyers' possession (*see* Supp. Loeser Decl., ¶ 6), the more rational approach would be not to impose the 14-day objection deadline for document demands to a motion to quash what is effectively a testimonial subpoena.

---

[1] *See, e.g., United States v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 278 (D.D.C. 2002); *Nova Biomedical Corp. v. i-Stat Corp.*, 182 F.R.D. 419, 422 (S.D.N.Y. 1998).

PLFS' REPLY ISO MTN TO QUASH SUBPOENAS
(CASE NO. CV-10-03118-SBA) - 2 -

010191-11 556938 V1

B.  **Even If the 14-Day Rule For Document Demands Does Apply, Plaintiffs Have Demonstrated "Unusual Circumstances and Good Cause" for Their Motion to Quash to Proceed**

Even if the 14-day rule Aurora borrows from Rule 45(c)(2)(B) does apply to Rule 45(c)(3), Aurora has utterly failed to demonstrate *why* Plaintiffs have failed to show "unusual circumstances and for good cause" for waiver not to apply here. The *only case cited by Aurora* in this regard, *Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005), is instructive. The court *granted* the motion to quash. *See id.* at 638. The *Moon* plaintiffs served a subpoena *duces tecum* on a non-party and 13 days later, the *Moon* defendant objected. *See id.* at 635. The court raised the possibility of waiver because the non-party was obligated to raise the objection, not the defendant. The *Moon* court was not presented with the factual situation here, a subpoena for *testimony from opposing counsel*. The court noted solely the overbroad nature of the document requests in the subpoena and held the objections to it had not been waived. *See id.* at 636.

This Court is also presented with a patently overbroad subpoena. Aurora demands: "All documents relating to oral or written communication that you have had with Aurora on behalf of or relating to any putative class member in this action." Loeser Decl. (Dkt. No. 123), Ex. A. Despite the obvious overbreadth of a demand for "all documents," Aurora also seeks discovery from absent class members, something to which it is obviously not entitled. For that reason alone, at least according to Aurora's sole case, there should be no waiver here. *See Moon*, 232 F.R.D. at 636. But Plaintiffs have provided multiple additional reasons why this case presents "unusual circumstances" and "good cause," to which Aurora responds with one *ipse dixit* sentence that Plaintiffs have not shown enough. But the law is against Aurora. Here: (1) There is a presumption against allowing depositions of opposing counsel; (2) Aurora's subpoena is overbroad; (3) the documents sought are privileged; (4) Aurora strategically timed its service when it knew and intended that Plaintiffs' counsel would be fully engaged in class certification briefing; (5) Aurora refused to postpone the deposition; (6) Aurora filed a Motion to Strike in contravention of Local Rule 7-3(a); and (7) as early as August 30, 2012, Plaintiffs' counsel told Aurora they would seek to quash a subpoena directed at Plaintiffs' counsel. These factors demonstrate both unusual

circumstances and good cause such that Plaintiffs' counsel have not waived their ability to make this Motion to Quash Aurora's subpoenas of Plaintiffs' counsel. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 51-52 (S.D.N.Y. 1996) (court allowed non-party's motion to quash subpoena duces tecum filed after Rule 45(c)(2)(B) time limit and excused untimeliness where requests were overly broad, subpoenaed witness was a non-party acting in good faith and communicated concerns with the subpoena and attempted to resolve dispute prior to filing motion).

**C.     Aurora Fails to Overcome the Presumption that Its Subpoenas of Opposing Counsel and his Former Employees are inappropriate and should be Quashed**

Aurora ignores that it has taken the extraordinary step of serving a subpoena on opposing counsel and argues that the standards applicable to deposing an attorney in general apply here. But that is not the law. The cases Aurora cites for its argument either contradict, or simply do not stretch enough to support, Aurora's argument.

*Thomas v. Cate*, 2010 US Dist. LEXIS 40085 (E.D. Cal. Apr. 5, 2010), which Aurora cites on page six of its opposition, explains Aurora's mistake. In *Thomas*, a prisoner sought to depose members of the Governor's staff who were attorneys and involved in the parole review process. *See id.* at \*2. Importantly, the prisoner *did not seek to depose opposing counsel.* The court expressly held:

> The Shelton framework was crafted in the context of a litigant's attempt to depose opposing counsel during pending litigation. Here, however, Petitioner does not seek to depose the attorney's responsible for litigating the instant matter.

*Id*. at \*7-8. Because a deposition of opposing counsel was not at issue, the *Thomas* court applied the *In re Friedman* test. *See id.* Obviously, any conclusions reached by the *Thomas* court are inapplicable to this case where Aurora is seeking a deposition of opposing counsel.

Aurora also relies on *Younger Mfg Co. v. Kaenon, Inc.*, 247 F.R.D. 586 (C.D. Cal. 2007), and that case does concern a subpoena directed to an attorney. But the attorney was the defendant corporation General Counsel and – critically – the General Counsel had communications with a Japanese company *from which plaintiff could not get discovery*. *See id.* at 588. ("…since Talex is a Japanese company, Darren's deposition is the only way plaintiff can obtain this information in time

to defend against Kaenon's motion for summary judgment."). In stark contrast, the other source of information here for Aurora is Aurora. It says it needs information *about its own communications with Mr. Oldham and his employees*. But Aurora has another way to get that information – from its own employees and its own records.[2]

With respect to Mr. Oldham in particular, Aurora's claim that it must depose him because it did not record all calls from the Law Office is purposefully deceptive. Mr. Hoffman declares:

> 6. Aurora's records indicate that Andrew Oldham, Leticia Colon, Isabel Sanchez, and other employees of Mr. Oldham made approximately forty-eight telephone calls (at least thirty-four of which were made directly by Mr. Oldham, Ms. Colon, and Ms. Sanchez) to Aurora to discuss the status of the Chaos' and Palugods' loans, foreclosure, loan modification requests, and Workout Agreements. Aurora has searched its records and does not have a recording of all of these telephone calls.

Hoffman Decl. (Dkt. No. 129), ¶ 6. The obvious inference Aurora intends to be drawn is that there are multiple calls involving Mr. Oldham and at least some of them are not recorded. But that is false. As Aurora knows well from its detailed call logs, there were but two calls to or from Aurora that involved Mr. Oldham – *and Aurora recorded both of them*.[3] *See* Supp. Loeser Decl., ¶ 4. Thus, Aurora simply has no basis to depose Mr. Oldham based on his oral communications with Aurora, it knows exactly what was said. The same holds true for written communications because Plaintiffs have already provided to Aurora all such communications sent to Aurora by Mr. Oldham, or

---

[2] In this same section of Aurora's brief, it quotes and cites *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002), as establishing Plaintiffs' need to show "good cause" for a protective order. *See* Opp., p. 3. But that case simply has nothing whatsoever to do with a motion to quash a subpoena, let alone a subpoena directed at opposing counsel. It concerns a discovery protective order in a vehicle defect case that the Los Angeles Times sought to invalidate so it could access the discovery documents. Aurora's following cite and quotation from *Beckham Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992), similarly concerned a discovery protective order and is simply copied directly out of *Phillips. See id.* at 471-72. *See also Phillips*, 307 F.3d at 1210.

[3] This patently deceptive submission to the Court on its own raises the specter of Rule 11, but Aurora goes even farther. It states: "Aurora is unaware of any other witness with complete knowledge of (1) the *communications between Mr. Oldham and numerous former employees of Aurora*…." Opp. at p. 6. But Aurora knows Mr. Oldham did not have communications with "numerous" employees. He had two communications *and Aurora recorded* them. These deceptive statements at least militate strongly in favor of the Court granting Plaintiffs' request that Aurora pay Plaintiffs' fees and expenses associated with this motion.

1  received by Mr. Oldham from Aurora. *See id.*, ¶ 6. Finally, Aurora claims a deposition is warranted
2  because it must know "the procedures by which received mail is handled and documented by the
3  Law Office." Opp., p. 5. But even assuming that need is crucial – which is dubious – it falls far
4  short of being uniquely available through deposition of opposing counsel. A simple interrogatory
5  would suffice.

As to Ms. Colon and Ms. Sanchez, records Aurora provided to Plaintiffs show that Aurora recorded 23 of the 38 calls these Law Firm employees made. *See* Supp. Loeser Decl., ¶ 5.[4] But as to the 15 non-recorded calls, *Aurora has its call logs*. These records describe in detail what the involved Aurora employee logged about each call and it is hardly conceivable that the now two-to-three year old memories of Mr. Oldham's former employees about particular calls for a particular client could provide any additional information. These former employees certainly would have no cause to take client files or notes with them when they left the firm. Most telling, *Aurora has not even bothered to serve the subpoenas on Ms. Colon and Ms. Sanchez. See id.*, ¶ 3. Certainly, if these former employees' aged recollections are as crucial as Aurora claims, it would at least make an effort to serve them.

Aurora next relies on *American Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 585 (S.D. Cal. 1995), for the proposition that deposing opposing counsel is not outright prohibited. Opp., p. 4. Of course, Plaintiffs have not argued to the contrary, rather they have shown that Aurora cannot overcome the presumption that its subpoena should be quashed. But even so, as with *Younger*, the facts and law of *Krieger* do not help Aurora; in fact, they help Plaintiffs. To begin with, and contrary to Aurora's argument that the non-presumption *In re Subpoena Issued to Dennis Friedman* test should apply,[5] *Krieger* applies the *Shelton* test advanced here by Plaintiffs as the

---

[4] Plaintiffs have no idea how Aurora arrived at a total of 34 calls involving Ms. Colon, Ms. Sanchez and Mr. Oldham. *See* Hoffman Decl., ¶ 6. From the records provided to Plaintiffs by Aurora, and including Mr. Oldham's single, recorded call, there were 39 calls involving these persons. *See* Supp. Loeser Decl., ¶ 5.

[5] Opp., p.4 and Note 4.

PLFS' REPLY ISO MTN TO QUASH SUBPOENAS
(CASE NO. CV-10-03118-SBA) - 6 -

010191-11 556938 V1

1  proper course to determine whether a subpoena of opposing counsel should be allowed. *See*

2  *Krieger*, 160 F.R.D. at 589.

While the *Krieger* court allowed a limited deposition of counsel, the facts there are wholly distinguishable from those here.[6] In *Krieger,* at issue was a default judgment in an underlying action and subsequent assignment of rights, both of which were completed by counsel, one of whom was an "associate attorney," and the other "playing no role" in the *Krieger* action. The court concluded the attorneys "are probably the only persons who possess complete knowledge regarding the circumstances surrounding both the default judgment and the assignment of Krieger's rights to Forcier and Machado." *Id.* at 590. This critical fact under the first prong of the *Shelton* test is not present here. There is no underlying transaction or event, critical to Aurora's defense, about which only Mr. Oldham and his former employees have knowledge. Quite the contrary, Aurora seeks information about its communications with counsel. It comes nowhere near the showing made in *Krieger* that "no other means exist to obtain the information sought." *Id.* at 589.

Furthermore, Mr. Oldham does not have the limited role that the counsel deposed in *Krieger* had. Mr. Oldham has been centrally involved in all aspects of this case on a day-to-day basis, he is liaison counsel with the Chaos and Palugods, he has attended each deposition in this case, and he will play a significant role in the case through judgment. *See* Supp. Loeser Decl., ¶ 2. The *Krieger* court made clear that the limited role of the attorneys in the ongoing litigation meant there would be a limited burden on allowing the depositions to proceed. It relied on the fact that the one involved attorney "is not lead counsel for defendants/counterclaimants. He has not been involved with the present litigation on a day-to-day basis." *Id.* at 591. The same cannot be said here. A deposition of Mr. Oldham would create a significant burden on the present litigation – and that is precisely why Aurora seeks it in the face of Plaintiffs' strong showing that a protective order is warranted.

---

[6] The *Krieger* court specifically delineated the areas of examination to be allowed and limited the depositions to six hours for one attorney and three hours for another. *See Krieger*, 160 F.R.D. at 591-92.

PLFS' REPLY ISO MTN TO QUASH SUBPOENAS
(CASE NO. CV-10-03118-SBA) - 7 -

010191-11 556938 V1

*United Phosphorus v. Midland Fumigant, Inc.*, 164 F.R.D. 245 (D. Kan. 1995), is similarly unhelpful to Aurora. After noting that the *Shelton* test would apply if it had to determine whether or not to allow an attorney deposition, the court held: "The issue in this case is not whether opposing counsel's deposition will be taken. Defendant agrees that Mr. Tillotson's deposition is appropriate, and Mr. Tillotson has agreed to give his deposition. Rather, the issue now before the court is the scope of the deposition inquiry." *Id.* at 247. As a result, the court only analyzed whether a limitation in scope of the deposition was warranted under Fed. R. Civ. P. 26.

### III. CONCLUSION

There is no legitimate basis for Aurora to depose opposing counsel and his former employees. Aurora has not overcome the presumption that its subpoena is inappropriate and should be quashed and a protective order should issue. Further, having no legitimate purpose for its subpoena, and having raised false facts and specious legal arguments in its opposition, Aurora should bear Plaintiffs' costs of this Motion to Quash and for a Protective Order under Fed. R. Civ. P. 45(c)(1).

DATE: October 5, 2012　　　　**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: ___/s/ Thomas E. Loeser___
Steve W. Berman (*Pro Hac Vice*)
Thomas E. Loeser (Cal. Bar No. 202724)
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

Andrew Oldham (144287)
LAW OFFICE OF ANDREW OLDHAM
901 Campisi Way, Suite 248
Campbell, CA 95008
Telephone: (888) 842-4930

T. Christopher Tuck
RICHARDSON, PATRICK, WESTBROOK &
BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg A
PO Box 1007
Mt. Pleasant, SC 29464
(843) 727-6515
ctuck@rpwb.com

Ali Abtahi (224688)
Idene Saam (258741)
ABTAHI LAW FIRM
1528 S. El Camino Real, Suite 204
San Mateo, CA 94402
Tel: (650) 341-1300
Fax: (650) 341-1303
aabtahi@abtahilaw.com
isaam@abtahilaw.com

*Attorneys for Plaintiff and the Class*