UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| MAUDER and ALICE CHAO; DEOGENESO and GLORINA PALUGOD and MARITZA PINEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br>v.<br><br>AURORA LOAN SERVICES, LLC,<br><br>Defendant. | No. C 10-3118 SBA (LB)<br><br>**ORDER GRANTING MOTION TO QUASH SUBPOENA DIRECTED AT PLAINTIFFS' COUNSEL AND COUNSEL'S FORMER EMPLOYEES AND FOR A PROTECTIVE ORDER**<br><br>[ECF Nos. 122, 124] |

## I. INTRODUCTION

Aurora wants to depose Andrew Oldham, co-counsel in this case, and two of his former employees, about telephone calls they made to Aurora and their law office's procedures for handling mail. Plaintiffs moved to quash the subpoenas and noticed the motion for a November 6 hearing in district court. *See* Motion to Quash, ECF No. 122. The district court referred the motion here (and previously referred all discovery). 11/13/12 Docket Entry Referral; 2/29/12 Docket Entry Referral.

After a hearing on November 26, 2012, the court grants the motion to quash the subpoenas.[1]

## II. FACTS

On August 30, 2012, Aurora's counsel told Plaintiffs' counsel Thomas Loeser that they intended

---

[1] The court also denies as moot the parties' stipulated request to modify their briefing schedule. *See* ECF No. 124.

to serve deposition subpoenas on co-counsel Andrew Oldham and two of Mr. Oldham's former employees and asked to serve the subpoenas by email. Loeser Decl., ECF No. 123 ¶¶ 2-3. Mr. Loeser said that the subpoenas were improper and would result in a motion to quash. *Id.* ¶ 3. Mr. Oldham agreed to accept service by email. *Id.*

On September 5, 2012, Aurora served three subpoenas on Mr. Oldham via e-mail. *See id.* ¶ 4, Ex. A. The subpoenas named Mr. Oldham and his former employees Leticia Colon and Isabel Sanchez. *Id.* ¶ 11, Ex. A. The subpoenas noticed Mr. Oldham's deposition for October 9, 2012, and Ms. Colon and Ms. Sanchez's depositions for October 10. *See id.*, Ex. A.

The subpoenas call for testimony and production of documents. The production section in Mr. Oldham's subpoena calls for the following documents:

> Documents sufficient to identify any business entity with which you are associated that had any communications with Aurora Loan Services LLC ("Aurora" concerning the Chaos, Palugods [the named plaintiffs], and/or any putative class members in this action, including but not limited to "Oldham Law," "Land Counsel, Inc." and "EZ Loan Mod."
>
> All documents relating to the loans of the Chaos and Palugods, which includes, but is not limited to, the Aurora-related loans of the Chaos (Loan #0032281694, 2284 Falllingtree Drive, San Jose, CA 95131), including but not limited to (1) all documents concerning modifications, workouts, forbearances, or applications thereof in connection with the loans; (2) oral or written communications you have had with Aurora on behalf of the Chaos and/or Palugods; (3) notes you or your employees (at any of the entities above) took in connection with telephone calls made received on behalf of the Chaos and/or Palugods; [and] (4) records you or your employees (at any of the entities described above) kept relating to oral or written communications with Aurora . . . including records that would indicate your receipt of letters sent to you by Aurora related to or concerning the Chaos and/or Palugods.
>
> All documents relating to oral or written communications you have had with Aurora on behalf of or relating to any putative class member in this action.

*Id.* The language in the subpoenas to the two employees is basically the same except that it does not include the first paragraph that starts with "Documents sufficient to." *Id.*

On September 7, 2012, Plaintiffs' counsel objected to the subpoenas in an e-mail, stating:

> In addition, the noticing of the deposition of Andrew Oldham will require us to brief a motion to quash now, while we are reviewing evidence and drafting our motion for class cert. For this deposition, which is patently meant to harass and annoy as all pertinent information concerning Andrew's contacts with Aurora have already been provided to you, there is absolutely no reason why it cannot be noticed for a later date so that we can turn to quashing that notice after we have finished our certification opening brief. Please respond today with whether you will agree to renotice the deposition of Andrew Oldham such that we can litigate that matter after September 18.

*Id.* ¶ 5; *see also id.* ¶¶ 8-10 (discussing the work involved in preparing the certification motion, including discovery review of six million pages produced by Aurora in the final weeks before the due date for the class certification motion). By reply email that day, Aurora refused Mr. Loeser's request. *Id.* ¶ 6.

On September 18, 2012, Plaintiffs filed the motion for class certification. *See* ECF No. 108. On September 20, 2012, Mr. Loeser began work on the motion to quash. *Id.* ¶ 24. On September 24, 2012, "in contravention of Local Rule 7-3(a)," Aurora moved to strike the class certification motion and asked for an expedited briefing schedule. *Id.* ¶ 8. Mr. Loeser responded to the motion to strike and the motion for expedited briefing, finalized the motion to quash, asked for a meet and confer with Aurora, and filed the motion to quash on September 27, 2012 after Aurora refused to withdraw the subpoenas. *Id.* ¶ 9-10; ECF No. 122. Mr. Loeser "used all possible diligence to file this motion [to quash] as many days as possible in advance of the noticed deposition dates." *Id.* ¶ 10.

### III. DISCUSSION

The first issue is whether the motion to quash is timely. If it is, the second issue is whether to quash the subpoenas.

#### A. Timeliness

Aurora argues that the motion is untimely because (1) it was filed 22 days after Aurora emailed the subpoenas, (2) Rule 45(c)(2)(B) requires filing of objections to subpoenas within 14 days after service of the subpoena, and (3) this time period is read into the time period for filing a "timely" motion to quash under Rule 45(c)(3). Opposition, ECF No. 128 at 3. Plaintiffs respond that courts are split about whether to read Rule 45(c)(2)(B) into Rule 45(c)(3). Reply, ECF No. 134 at 4 & n.1. The parties agree that the court can excuse tardiness "[i]n unusual circumstances and for good cause." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005); *see* Mot. at 12; Opp'n at 4.

Regardless of whether the 14-day rule applies here, the court finds that the facts set forth above about the timing of the motions and the timing of discovery demonstrate good cause. (The parties contemplate setting depositions in December, and there is no prejudice from any delay.)

#### B. Motion to Quash Depositions of An Attorney of Record and His Employees

Plaintiffs first raise a concern that Aurora seeks privileged information. Motion, ECF No. 122 at

5. Aurora responds that it does not seek privileged information and seeks only "fact witness" testimony. Opposition, ECF No. 128 at 5.

Considering only Aurora's seeking of non-privileged fact discovery, a party may depose "any person" under Rule 30(a)(1), and there is no express prohibition against deposing an attorney of record in a case. *See Graff v. Hunt & Henriques,* No. C 08–0908 JF (PVT), 2008 WL 2854517, at *1 (N.D. Cal. July 23, 2008). Still, "[t]he Supreme Court . . . alluded to a presumption that trial counsel should not be forced to testify because doing so compromises the standards of the legal profession." *Nocal, Inc. v. Sabercat Ventures, Inc.,* No. C04–0240, 2004 WL 3174427 (N.D. Cal., Nov. 15, 2004) (citing *Hickman v. Taylor,* 329 U.S. 495, 513 (1947)); *accord Mustang Mktg., Inc. v. Chevron Prods. Co.,* No. SA CV 02–485 DOC (MLGx), 2006 WL 5105559, at *3 (C.D. Cal. Feb. 28, 2006). For this reason, attorney depositions even for fact discovery generally are allowed only when the discovery cannot be obtained from another place. *Graff,* 2008 WL 2854517, at *1 (citing *Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986)).

The *Shelton* court explained that attorney depositions should be permitted only where the party seeking the deposition shows that (1) no other means exist to obtain the information, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. 805 F.2d at 1327. District courts in this district and elsewhere in the Ninth Circuit recognize *Shelton* as the leading case on attorney depositions. *See, e.g., S.E.C. v. Jasper*, No. C07-06122 JW (HRL), 2009 WL 1457755 (N.D. Cal. May 26, 2009); *Fausto v. Credigy Servs. Corp.,* No. C07–05658, 2008 WL 4793467 (N.D. Cal., Nov. 3, 2008); *Graff v. Hunt & Henriques,* No. C08–0908, 2008 WL 2854517 (N.D. Cal., July 23, 2008); *Nocal,* 2004 WL 3174427 (N.D. Cal., Nov. 15, 2004); *Massachusetts Mutual Life Ins. Co. v. Cerf,* 177 F.R.D. 472, 479 (N.D. Cal., 1998).

Aurora argues for the "more flexible . . . test" applied by the Second Circuit in *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65 (2d Cir. 2003) (and also argues that it still wins under the *Shelton* standard). Opposition, ECF No. 128 at 5. The *Friedman* court considered "various factors," including (1) the need to depose the lawyer, (2) the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation; (3) the risk of encountering privilege and work product issues; and (4) the extent of discovery already conducted. 350 F.3d at

72. "Under this approach, the fact that a deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require resort to alternative discovery devices, but it is a circumstance to be considered." *Id.* (attorney consented to deposition and mooted appeal; case involved deposition of former counsel during merger negotiations who advised the board of directors, and the directors asserted affirmative defenses based on the business judgment rule and advice of counsel); *accord Younger Mfg. Co. v. Kaenon, Inc.,* 247 F.R.D. 586 (C.D. Cal. 2007) (citing *Friedman* and allowing deposition of general counsel who was a percipient witness to communications between parties about manufacturing of lenses, instructions about manufacturing, and purchase of lenses).

As a starting point, these cases show that trial counsel is different than in-house counsel when issues of litigation strategy are implicated (even if privilege is not). And as Plaintiffs point out, it is different when in-house counsel is a percipient witness and a source of fact discovery that cannot be obtained elsewhere. *See* Reply, ECF No. 134 at 6. Also, cases allow depositions of counsel relied on for an advice of counsel defense (that waives attorney-client privilege).

The undersigned – like many other courts – applies *Shelton* as the relevant standard for evaluating whether Aurora seeks information that is so crucial from trial counsel that this court should allow a deposition.

As to the documents that Aurora seeks, Plaintiffs assert that they have produced them. More particularly, Plaintiffs note that the relevant documents come from Aurora and state that they nevertheless produced "every non-privileged document in their possession that remotely touches on the loans at issue here. This necessarily included all correspondence from Aurora along with other loan and forbearance related documents Plaintiffs possessed. [] As a result, there simply are no remaining non-privileged documents in the possession of the Law Office or its employees. . . . [T]he subpoenas for documents will provide nothing to Aurora." Motion, ECF No. 122 at 6.

Aurora did not dispute in its opposition and conceded at the hearing that Plaintiffs produced all responsive documents and instead argues that it wants the testimony of these "fact witnesses."

Opposition, ECF No. 128 at 5.  In a relatively short and high–level argument,[2] Aurora asserts that "Mr. Oldham played a substantial and ongoing role in the underlying facts, including his office placing some forty-eight (48) calls to Aurora before this litigation ever started."  Opposition, ECF No. 128 at 5.  It argues that it is entitled to the "unique," "relevant," and non-privileged information that Mr. Oldham and his employees have "that goes to the heart of the case."  *Id.*  It gives three reasons or contexts for this conclusion.  *Id.*

*First*, Mr. Oldham and his employees communicated directly with Aurora on behalf of Plaintiffs, and Aurora seeks the substance of these calls, "which are material information that Aurora has no other means of obtaining."  *Id.*  It concedes – as Plaintiffs argue – that it recorded "many telephone conversations," but it "has searched its records and is not in possession of a recording for every telephone call at issue."  As to the number of calls at issue, Plaintiffs say Mr. Oldham made two calls, both of which were recorded, and Ms. Colon and Ms. Sanchez made 38 calls, 23 of which were recorded.  Suppl. Loeser Decl. ¶4.  Aurora says they made 34 calls, some of which were recorded.  Hoffman Decl., ECF No. 131 ¶ 6.  Aurora also wants to know how Mr. Oldham's office handled and documented mail, and this is "key factual information regarding the chain of custody for documents sent by Aurora and received by Plaintiffs."  Opposition, ECF No. 128 at 6.

*Second*, the "deponents are direct participants in oral and written communications between them and Aurora regarding the Chaos' and Palugods' requests for loan modifications."  *Id.*

*Third*, "[f]ull knowledge regarding the circumstances of notice provided to the Law Office on behalf of the Chaos and Palugods is crucial to Aurora's preparation in this case. . . . [T]he information is unique.  Aurora is unaware of any other witnesses with complete knowledge of (1) the communications between Mr. Oldham and numerous former employees of Aurora; and (2) the record-keeping process used by [] Mr. Oldham's law office to track incoming correspondence."  *Id.* at 7.

Applying *Shelton*'s three factors, it is undisputed that Plaintiffs produced all documents,

---

[2] Aurora's argument on the merits is under three pages.  Opposition, ECF No. 128 at 5-7.  Most of the first page is the legal standard.  Then there is a proffer on pages two and three, but three-quarters of a page either quotes the Loeser Declaration or talks about how Aurora is not seeking privileged information.  *Id.* at 4-5.  There are a couple of lines about the number of calls on page 3.

telephone calls were recorded, and Aurora's own records combined with what it has from Plaintiffs already provides a sufficient avenue for Aurora to obtain the information it needs. Also, Aurora's high-level arguments do not establish that its need to depose Mr. Oldham and his former employees is "crucial" to its preparation of its case. The court quashes the subpoenas.

## IV.  CONCLUSION

For the reasons previously stated, the court GRANTS Plaintiffs' motion to quash and denies the motion to modify the briefing schedule as moot.

This disposes of ECF Nos. 122 and 124.

**IT IS SO ORDERED.**

Dated: November 26, 2012

LAUREL BEELER
United States Magistrate Judge