UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MAUDER and ALICE CHAO; DEOGENOSO and GLORINA PALUGOD; and<br><br>MARITZA PINEL,<br><br>on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AURORA LOAN SERVICES, LLC,<br><br>Defendants. | Case No: C 10-3118 SBA<br><br>Consolidated with:<br>No. C 10-3883 SBA<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Dkt. 97 |

Mauder and Alice Chao, Deogenoso and Glorina Palugod, and Maritza Pinel (collectively "Plaintiffs"), bring the instant consolidated putative class action on behalf of themselves and all others similarly situated to challenge the allegedly fraudulent, unfair and unlawful business practices of Defendant Aurora Loan Services, LLC ("Aurora") with respect to its use of mortgage "Workout Agreements." The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

The parties are presently before the Court on Aurora's Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c). Dkt. 25. Having read and considered the papers filed in connection with this matter, and being fully informed, the Court DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FORECLOSURE PROCESS

Before addressing the issues presented in Aurora's motion to dismiss, a brief review of California's foreclosure process is helpful. California Civil Code sections 2924 through 2941 govern non-judicial foreclosures initiated under a deed of trust. Gardner v. Am. Home Mortg. Serv., Inc., 691 F. Supp. 2d 1192, 1102 (E.D. Cal. 2010). Under this statutory scheme, a non-judicial foreclosure is commenced by the recording of a notice of default by a "trustee, mortgagee, or beneficiary, or any of their authorized agents . . . ." Cal. Civ. Code § 2924(a)(1). Id. If the default is not cured within three months of the filing of a notice of default, a notice of sale may be issued. Id. § 2924(a)(3). The notice of sale must indicate the time and location of the sale, the total amount of the unpaid balance of the mortgage, and identify the original trustor and the trustee or other person conducting the sale. Id. § 2924f(b)(1). The notice of sale must be recorded, posted, published and mailed at least twenty days prior to the sale date. Id. §§ 2924f(b)(1), 2924b(b)(2).

"During the foreclosure process, the debtor/trustor [i.e., the borrower] is given several opportunities to cure the default and avoid the loss of the property." Moeller v. Lien, 25 Cal. App. 4th 822, 830 (1994). Specifically, borrowers have a right to reinstate their loan by paying delinquencies and specified costs for a time period up to five business days prior to the date of sale, including any postponement. Knapp v. Doherty, 123 Cal. App. 4th 76, 86-87 (2004) (citing Cal. Civ. Code § 2924c(e)). "In addition to the right of reinstatement, the trustor also possesses an equity of redemption, which permits the trustor to pay all sums due prior to the sale of the property at foreclosure and thus avoid the sale." Moelller, 25 Cal. App. 4th at 830-31 (citing Cal. Civ. Code, §§ 2903, 2905.) The trustee may postpone the sale at any time before the sale is completed. Cal. Civ. Code § 2924g(c)(1)). If the sale is postponed, notice must be given. Id. § 2924g(d)).

### B. FACTUAL SUMMARY[1]

At various times, each of the Plaintiffs herein purchased homes in California which eventually went into foreclosure. Consolidated Class Action Complaint ("Compl.") ¶¶ 57, 58, 62, 91, 95, 115 and 119, Dkt. 60. After notices of default were recorded against the properties, Aurora offered Workout Agreements to Plaintiffs. Id. ¶¶ 66, 69, 97 and 121. These agreements were represented to Plaintiffs as a means of curing their loan defaults and avoiding the loss of their properties while they were being considered for a loan modification. E.g., id. ¶¶ 1, 2, 47.

To bring their loan current, the Workout Agreements required Plaintiffs to adhere to a monthly payment plan. Id. ¶ 2. In return for Plaintiffs' agreement to make monthly payments plus other fees, Aurora promised not to foreclose during the duration of the Workout Agreement, and, at the end of the agreement, to provide them the opportunity to "cure" their loan deficiency through reinstatement, payoff or other means. Id. ¶ 3. In fact, Aurora's promises were illusory, as Aurora refused to honor any of its alleged commitments. Id. ¶ 4. According to Plaintiffs, the Workout Agreements allow Aurora to continue extracting payments from borrowers, deny loan modification at the conclusion of the payment plan, and then foreclose on homeowner's properties without affording them any ability to avail themselves of California's statutory cure provisions. Id. ¶¶ 2, 48-56.

### C. PROCEDURAL HISTORY

The instant consolidated action originally began as two separate lawsuits: Pinel v. Aurora Loan Servs. LLC, No. C 10-3118 SBA and Chao v. Aurora Loan Servs., LLC, No. C 10-3383 SBA. Aurora filed unsuccessful motions to dismiss in each case, after which the parties agreed to consolidate the actions. Dkt. 79.

Plaintiffs filed their Consolidated Complaint on November 2, 2011. Dkt. 60. The Consolidated Complaint alleges state law causes of action styled as: (1) Rescission and

---

[1] The following facts are taken from the Consolidated Class Action Complaint ("Consolidated Complaint"), which is the operative pleading before the Court. For purposes of the instant motion, the well-pleaded factual allegations set forth in the Consolidated Complaint are taken as true.

Restitution (Fraudulent Inducement); (2) Rescission and Restitution (Failure of Consideration); (3) Breach of Contract (Implied Covenant of Good Faith and Fair Dealing); (5) Unjust Enrichment; (6) Unfair Debt Collection Practices (Cal. Civil Code §§ 1788, et seq.); (7) Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.); and (8) Declaratory Relief.

Aurora filed its Answer to the Consolidated Complaint on December 2, 2011. Dkt. 65. Almost nine months later on August 24, 2012, Aurora filed the instant Motion for Judgment on the Pleadings. In its motion, Aurora argues that each of the claims alleged by Plaintiffs seeks to impose a disclosure requirement beyond that which is required by California law. As a result, Aurora asserts that such claims are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1451, et seq., and its implementing regulations. Plaintiffs have timely filed an opposition to and Aurora has a reply in support of the motion, and the matter is ripe for adjudication.[2]

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog" because the motions are "functionally identical." Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, a Rule 12(c) motion may be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).

---

[2] Plaintiffs devote several pages of their fifteen-page opposition brief to chiding Aurora for not making its HOLA preemption argument in its earlier Rule 12(b)(6) motions. See Opp'n Mot. at 1-4, Dkt. 101. In turn, Aurora spends several pages of its brief responding to Plaintiffs' contentions. See Reply at 3-5, Dkt. 105. The parties' arguments on this point are superfluous, as they ultimately are not germane to the Court's resolution of the substantive issues presented by Aurora's motion. The Court does not countenance acrimonious and extraneous exchanges between the parties in their motion papers, and expects counsel to comport themselves with the utmost professionalism at all times.

## III. DISCUSSION

### A. HOLA

Enacted in 1933 during the Great Depression, "HOLA was designed to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices.'" Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001, 1004 (9th Cir. 2008) (citing Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 160-61 (1982)). To implement HOLA, Congress created the Office of Thrift Supervision ("OTS") and vested it "with 'plenary authority' to promulgate regulations involving the operation of federal savings associations." Id.; see 12 U.S.C. § 1464.

By statute, the OTS "is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations[.]" 12 C.F.R. § 560.2(a). A non-exclusive list of the types of state laws preempted by HOLA is set forth in 12 C.F.R. § 560.2(b). The Ninth Circuit has set forth the following analytical framework for assessing whether a state law claim is preempted:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Silvas, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)).[3] The Court now applies the foregoing framework to each of the claims alleged in the Consolidated Complaint to determine whether they are preempted by HOLA.

### B. CLAIMS

#### 1. Restitution and Rescission Claims

In their first two claims for relief, Plaintiffs seek rescission and restitution based on theories of fraudulent inducement and failure to consideration. Compl. ¶¶ 156-180. "An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." Engalla v. Permanente Medical Group, Inc., 15 Cal.4th 951, 973-974 (1997) (internal quotations omitted). A party fraudulently induced to enter into a contract "may elect either the contract remedy (restitution based on rescission) or the tort remedy (affirmance and damages)." 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 152, at 234; see also Cal. Civ. Code § 1689(b)(1). Likewise, the failure of a party to perform its contractual promise may constitute a "failure of consideration," thereby giving rise to a claim, inter alia, for rescission and restitution. See Runyan v. Pacific Air Indus., Inc., 2 Cal.3d 304, 317 (1970); see also Cal. Civ. Code § 1689(b)(4).

According to Aurora, Plaintiffs' claims are dependent on the notion that Aurora had a duty to provide notice to Plaintiffs regarding the rejection of their loan modifications within the time period that would have allowed them to seek reinstatement under section 2924c(e). Mot. at 6-10, Dkt. 97. Aurora asserts that section 2924c(e) imposes no such requirement, and that, in any event, state laws governing loan disclosure obligations are preempted by section 560.2(b)(9) and (10). Those subsections provide as follows:

> (b) Illustrative examples. Except as provided in § 560.110 of this part, the types of state laws preempted by paragraph (a) of

---

[3] Effective July 21, 2011, the Dodd-Frank Wall Street Reform Act and Consumer Protection Act of 2010 transferred oversight authority from the OTS to the Office of the Comptroller of the Currency, and changed the scope of HOLA preemption. See 12 U.S.C. §§ 1465(a), 5412(b). These amendments are not retroactive. See Molosky v. Wash. Mut., Inc., 664 F.3d 109, 113 n.1 (6th Cir. 2011). Accordingly, the Court applies the preemption analysis set forth in Silvas. See Haggarty v. Wells Fargo Bank, N.A., No. C 10-2416 CRB, 2012 WL 4742815, at *3 n.2 (N.D. Cal., Oct. 3, 2012).

>this section include, without limitation, *state laws **purporting to impose requirements*** regarding: . . .
>
>. . . .
>
>(9) ***Disclosure*** . . . , including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
>(10) Processing, origination, ***servicing***, sale or purchase of, or investment or participation in, mortgages[.]

12 C.F.R. § 560.2(b)(9), (10) (emphasis added). Aurora argues that "[b]ecause Plaintiffs seek to impose specific duties of disclosure on Aurora as part of its servicing of their mortgage loans, all of their claims are preempted by federal law." Mot. at 8.

In general, when a state law claim necessarily requires the lender to provide specific notices or disclosures during the lending or foreclosure process, courts have found that such claims are preempted by HOLA. See Lawther v. OneWest Bank, FSB, No. C 10-00054 JCS, 2012 WL 298110, at *23 (N.D. Cal. Feb. 1, 2012) (citing cases). "On the other hand, when a claim is based on the general duty not to misrepresent material facts, and when application of a state law does not regulate lending activity, district courts have found that the claims are not preempted by HOLA." Id.; see, e.g., DeLeon v. Wells Fargo Bank, N.A., No. C10-01390 LHK, 2011 WL 311376, at *6 (N.D. Cal. Jan. 28, 2011) (ruling that claim that lender falsely represented that it would complete a loan modification agreement and that no foreclosure sale would occur while the loan modification was pending not preempted by HOLA).

In the instant case, the Court is persuaded that Plaintiffs' rescission and restitution claims are based on a general duty not to misrepresent material facts and do not purport to regulate lending activity. The Consolidated Complaint alleges that Plaintiffs were misled into believing that if they agreed to and complied with the terms of their Workout Agreements—including adherence to a monthly payment plan—they would be able to cure their defaults and avoid foreclosure. E.g., Compl. ¶¶ 161, 164-168, 175-177. Plaintiffs

contend that such representations were false and intentionally made by Aurora to induce them to enter into the Workout Agreements and make additional payments thereunder in the hope that they would be able to bring themselves current on their loan and avoid foreclosure. Notwithstanding Plaintiffs' compliance with the terms of the Workout Agreements, Aurora lulled Plaintiffs into a false sense of security that they were safe from foreclosure, which, in turn, effectively obviated their ability to avoid foreclosure by, inter alia, exercising their statutory right to reinstatement. Id.

Aurora all but ignores the gravamen of Plaintiffs' claims, and instead, cites to various paragraphs of the Consolidated Complaint which Aurora contends demonstrate that Plaintiffs, in fact, are "claiming a failure to disclose specific information to Plaintiffs at least five days prior to a foreclosure sale" and the lack of an "opportunity to cure." See Reply at 8. To be sure, the Consolidated Complaint does aver that Aurora deprived Plaintiffs of their statutory right to notice of the foreclosure and to cure the default. E.g., Compl. ¶¶ 4, 85, 86. Those allegations, however, are presented in the context of Plaintiffs' overarching claim that Aurora used its Workout Agreements as a means of fraudulently extracting additional loan payments with no actual intention of allowing Plaintiffs to avoid foreclosure. E.g., id. ¶ 1-4.[4] In addition, Plaintiffs' references to section 2924c(e) and the rights afforded thereunder are presented to illustrate that but for Aurora's Workout Agreements, Plaintiffs and class members would have been able to avail themselves of those statutory remedies. The allegations regarding lack of notice are not intended to assert a stand-alone claim or to impose new notice requirements on Aurora, but simply are presented to illustrate the harmful and deceptive nature of Aurora's practices in using the Workout Agreements.

In sum, the Court finds that Plaintiffs' claims for rescission and restitution are based on a general duty not to misrepresent material facts and do not purport to regulate Aurora's

---

[4] Moreover, Plaintiffs' claims are within the purview of section 560.2(c), which provides that contract, commercial and tort claims, among others, are not preempted to the extent they "only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a)." 12 C.F.R. § 560.2(c).

lending activity by imposing a new disclosure requirement. Accordingly, Plaintiffs' first and second claims for rescission and restitution based on theories of fraudulent inducement and failure to consideration are not preempted by HOLA. See Plastino v. Wells Fargo Bank, – F. Supp. 2d –, 2012 WL 2061515 (N.D. Cal., June 7, 2012) ("Courts have . . . interpreted Silvas to not preempt all state law causes of action arising out of loan modification and/or foreclosure proceedings, but only those that impose new requirements on the lender.") (citing cases).

### 2. Contract Claims

Plaintiffs' third claim for breach of contract alleges that Aurora failed to honor its agreement to allow Plaintiffs to cure their arrearages. Compl. ¶ 182. In their fourth claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs similarly allege that Aurora foreclosed on their homes without affording them an opportunity to cure their defaults, as provided for in their Workout Agreements. Id. ¶ 189.

Aurora again argues that Plaintiffs are attempting to allege a failure to disclose under section 2924c(e), which allegedly is preempted by HOLA. See Mot. at 11. This contention lacks merit. Plaintiffs' contract claims are not based on a lack of disclosure; rather, they are based on Aurora's failure to comply with its promises in its Workout Agreements to allow Plaintiffs to satisfy their loan arrearages. See Compl. ¶¶ 181-195. Thus, the Court finds that Plaintiffs' contract claims are not preempted by HOLA.

### 3. Rosenthal Fair Debt Collection Practices Act and Unjust Enrichment Claims

Plaintiff's fifth claim alleges a violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"). The Rosenthal Act forbids the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt" through its incorporation by reference of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e). See Cal. Civ. Code § 1788.17. Plaintiffs allege that Aurora violated the Rosenthal Act by misleading them into believing that their loans were being considered for modification during the pendency of their Workout Agreements, but that

Aurora unilaterally ceased its review and foreclosed on their properties on dates previously represented as postponed. Compl. ¶ 198. Aurora contends that this claim, as well as Plaintiff's sixth claim for unjust enrichment, are "derivative" of their claims for rescission and restitution, and therefore, both are preempted by HOLA. See Mot. at 13. Since the Court has rejected Aurora's argument above, the Court rejects it here as well.

Alternatively, Aurora relies on Curcio v. Wachovia Mortg. Corp., No. 09-CV-1498-IEG (NLS), 2009 WL 3320499 (S.D. Cal. Oct. 14, 2009) for the proposition that Plaintiffs' Rosenthal Act claim, in particular, is preempted. See Mot. at 13. In Curcio, a homeowner alleged twelve causes of action, including one under the Rosenthal Act, based on the lender's alleged failure to provide accurate disclosures and a loan modification. Without discussing the specifics of any particular cause of action, the district court ruled that all of plaintiff's claims were preempted under HOLA. In reaching its decision, the court found that plaintiff's claims were preempted under section 560.2(b) because they challenged the adequacy of the defendant's loan documents and its conduct relating to providing a loan modification. Id. at *5-*6. Here, Plaintiffs' Rosenthal Act claim is not based on any loan documents or conduct relating to loan modifications. While touching upon the matter of loan modifications, Plaintiffs' Rosenthal Act claim instead focuses on Aurora's alleged use of its Workout Agreements in connection with its collection of Plaintiffs' mortgages. See Compl. ¶ 198. The Court thus finds that Curcio is inapt.

### 4. UCL Claims

California's Unfair Competition Law ("UCL") makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009). The Consolidated Complaint alleges claims under each of prong of the UCL. Compl. ¶¶ 211-226. Aurora argues that these claims are preempted for the same reasons that Plaintiffs' rescission and restitution claims allegedly are preempted. Mot. at 14-15. As discussed, the Court has rejected that contention.

1  Thus, for the reasons previously discussed, the Court finds that Plaintiff's seventh claim
2  under the UCL is not preempted by HOLA.
3  **IV.   <u>CONCLUSION</u>**
4      For the reasons stated above,
5      IT IS HEREBY ORDERED THAT Aurora's Motion for Judgment on the Pleadings
6  is DENIED.  This Order terminates Docket 97.
7      IT IS SO ORDERED.
8  Dated: December 18, 2012

                                          SAUNDRA BROWN ARMSTRONG
                                          United States District Judge