UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MAUDER and ALICE CHAO; DEOGENESO and GLORINA PALUGOD<br><br>and<br><br>MARITZA PINEL<br><br>on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AURORA LOAN SERVICES, LLC,<br><br>Defendant. | Case No: C 10-3118 SBA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS IN PART THE AMENDED CLASS ACTION COMPLAINT AND TO STRIKE THE CLASS DEFINITION**<br><br>Dkt. 140 |

Plaintiffs Mauder and Alice Chao, Deogeneso and Glorina Palugod, and Maritza Pinel, on behalf of themselves and all others similarly situated, bring the instant consolidated putative class action against Aurora Loan Services, LLC ("Aurora") to challenge its practice of having distressed borrowers enter into mortgage "Workout Agreements" under the false hope of avoiding foreclosure. The Amended Consolidated Class Action Complaint ("Amended Consolidated Complaint"), the operative pleading before the Court, alleges violations of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788 et seq., and asserts various other state law causes of action. The Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

The parties are presently before the Court on Defendant Aurora's Motion to Dismiss in Part the Amended Class Action Complaint and to Strike the Class Definition. Dkt. 140. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. In addition, the Court refers this matter to Magistrate Judge Nathanael Cousins for a mandatory settlement conference. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY[1]

Aurora is a loan originator and servicer. Am. Consolidated Action Compl. ("ACAC") ¶ 17, Dkt. 133. Prior to 2008, Aurora was owned by Lehman Brothers ("Lehman"), which acquired Aurora to originate and service single-family residential loans "to prop up its mortgage-backed securities." Id. ¶ 25. During the time period from 2004 to 2007, Aurora originated approximately one-third of the mortgages securitized by Lehman. Id. ¶ 26. Lehman declared bankruptcy in 2008, and Aurora is now owned by Aurora Bank F.S.B. (formerly Lehman Brothers Bank). Id. ¶ 17.

Each of the Plaintiffs purchased homes in California and obtained mortgages serviced by Aurora. Id. ¶¶ 58-64, 92-97, 116-121. In 2008 and 2009, Plaintiffs fell behind on their mortgage payments, and thereafter sought loan modifications from Aurora. Id. ¶¶ 62, 95, 119. After notices of default were recorded against Plaintiffs' properties, Aurora presented Plaintiffs with Workout Agreements as a prerequisite to seeking loan modifications. Id. ¶¶ 35, 65-66, 70, 98, 122. The Workout Agreements required Plaintiffs to make monthly payments, which included legal and other fees outside the principal and interest owed under their mortgages. Id. ¶¶ 72, 101, 126. In return, Aurora promised (a) not to foreclose for the duration of the Workout Agreement, and (b) at the end of the Workout Agreement to provide an opportunity for each Plaintiff to "cure" the loan

---

[1] The following facts are taken from the Amended Consolidated Complaint, which, for purposes of this motion, are accepted as true.

deficiency through: (1) reinstatement (i.e., bring the loan current); (2) payoff (i.e., refinancing with another lender to pay off the Aurora-serviced loan); (3) modification at the discretion of Aurora; or (4) another workout "option" at the discretion of Aurora. Id. ¶ 3.

Plaintiffs aver that the promises made by Aurora were illusory and are part of a scheme to fraudulently extract additional monies from distressed borrowers. Id. ¶¶ 1, 4, 9, 39, 91. By design, the payments due under the Workout Agreements are insufficient to satisfy the outstanding arrearage, thereby leaving borrowers vulnerable to foreclosure. Id. ¶ 44. Meanwhile, at the end of the term of the Workout Agreement, Aurora informs borrowers to continue making monthly payments while they are "considered" for a loan modification and assures them that the foreclosure will be placed "on hold." Id. ¶¶ 2, 24, 46, 49. Borrowers are thus led to believe that they are being considered for a loan modification and will have an opportunity to cure their default if a modification is not offered. Id. In reality, Aurora's policies and procedures make it impossible for it to render a modification decision during the term of the Workout Agreement. Id. ¶ 2. Thus, once the modification is denied, Aurora immediately reactivates the foreclosure process without affording borrowers an opportunity to cure their default or delinquency. Id. ¶¶ 2-4, 6, 24, 44, 47, 48, 49, 52, 55-57. Often, borrowers are unaware that the foreclosure has been recommenced until after their homes have been sold and they are presented with an eviction notice. Id.

Aurora's Workout Agreement program is alleged to be little more than a ruse to extract payments from borrowers to which Aurora has no legal right. If a borrower is in default and not making any payments, Aurora receives no compensation for servicing the loan. Id. ¶ 34. Thus, Plaintiffs allege that Aurora uses its Workout Agreements as a means of securing a cash flow from distressed borrowers on what are otherwise non-performing

loans. Id. ¶ 35.[2] As such, it allegedly is in Aurora's interest to have loans in default and arrears for as long as possible prior to foreclosure—and then to foreclose. Id. ¶ 33. Aurora stands only to lose revenue by extending loan modifications to borrowers instead of foreclosing. Id.

### B. PROCEDURAL SUMMARY

The instant consolidated action originally began as two separate lawsuits: Pinel v. Aurora Loan Servs. LLC, No. C 10-3118 SBA and Chao v. Aurora Loan Servs., LLC, No. C 10-3383 SBA. Aurora filed unsuccessful motions to dismiss in each case, after which the parties agreed to consolidate the actions. Dkt. 54, 79.

On November 2, 2011, Plaintiffs filed their Consolidated Class Action Complaint ("Consolidated Complaint") on behalf of, "All California homeowners who have entered into a Workout Agreement with Aurora, made payments under the Workout Agreement, and whose homes were foreclosed without such homeowners receiving the opportunity to cure their default prior to foreclosure." Consolidated Class Action Complaint ("CAC") ¶ 146, Dkt. 60. The Consolidated Complaint also identified a subclass consisting of, "All members of the Class who made additional payments to Aurora after the purported termination date of their respective Workout Agreements." Id. The Consolidated Complaint alleged eight state law causes of action styled as: (1) Rescission and Restitution (Fraudulent Inducement); (2) Rescission and Restitution (Failure of Consideration); (3) Breach of Contract; (4) Breach of Contract (Implied Covenant of Good Faith and Fair Dealing); (5) Unjust Enrichment; (6) Unfair Debt Collection Practices (Cal. Civil Code §§ 1788, et seq.); (7) Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.); and (8) Declaratory Relief.

---

[2] California Civil Code § 580b forbids deficiency judgments in non-judicial foreclosure of residential mortgages. ACAC. ¶ 29. This means that once a lender invokes its power to sell the security underlying a mortgage, it cannot also seek to collect on the underlying note any amount owed in excess of the amount it recovers through the trustee's sale. Id. The Workout Agreements allegedly facilitate Aurora's ability to obtain additional payments from borrowers tempted with the prospect of a loan modification to which Aurora would not otherwise be entitled to collect under California law. Id. ¶¶ 5, 90.

**1**   Aurora filed its Answer to the Consolidated Complaint on December 2, 2011.  Dkt.
**2** 65.  Over eight months later, on August 24, 2012, Aurora, now represented by new counsel,
**3** filed a motion for judgment on the pleadings in which Aurora argued that each of Plaintiffs'
**4** causes of action was preempted by the Home Owners' Loan Act, 12 U.S.C. § 1451, et seq.,
**5** and its implementing regulations.  Dkt. 97.  The Court subsequently denied Aurora's
**6** motion.  Dkt. 164.
**7**   On October 2, 2012, Plaintiffs filed their Amended Consolidated Complaint,
**8** alleging the identical eight causes of action as the original Consolidated Complaint and
**9** seeking the same relief.  Dkt. 133.  However, Plaintiffs modified certain allegations
**10** principally to reflect: (1) that "Aurora's internal policies and procedures made it impossible
**11** for it to render a modification decision during the term of the Workout Agreement and its
**12** policy was not to provide cure information to the borrower at the end of the Workout
**13** Agreement absent a specific request from the borrower," ACAC ¶ 2; (2) Aurora's financial
**14** motive for attempting to place borrowers into Workout Agreements, id. ¶¶ 34-35;
**15** (3) Aurora's representations that loan modification requests were still under review after
**16** the expiration of the Workout Agreement, and that borrowers were often unaware that a
**17** foreclosure had been instituted until after their home had been sold, id. ¶ 49; and (4)
**18** summaries of Aurora's conversations with the Palugods, id. ¶¶ 113, 115.  Plaintiffs also
**19** modified their class definitions consistent with the above and to reference the Rosenthal
**20** Act.  Id. ¶ 147.
**21**   Aurora has now filed a motion to dismiss and strike which attacks all causes of
**22** action alleged in the Amended Consolidated Complaint "to the extent the claims are based
**23** on Plaintiffs' new theory that Aurora was required to review Plaintiffs' request for a loan
**24** modification within the term of a Workout Agreement."  Mot. at i, Dkt. 140.  Plaintiffs
**25** counter that Aurora's motion is procedurally improper and deny the contention that the
**26** Amended Consolidated Complaint makes any substantive changes to the pleadings.  Dkt.
**27** 144. The motion has been fully briefed and is ripe for adjudication.
**28**

**II.     LEGAL STANDARD**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., -- F.3d --, 2013 WL 5712731, at *3 (9th Cir. Sept. 3, 2013). "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'" Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting in part Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570 (2007)).

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88 (9th Cir. 2002).

**III.    DISCUSSION**

    **A.     PROCEDURAL ISSUES**

Plaintiffs contend, as a threshold matter, that Aurora's motion to dismiss is an improper successive motion under Federal Rule of Civil Procedure 12(g)(2). That rule prohibits successive Rule 12(b)(6) motions raising "a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). "The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to

dismiss on one ground, loses, then files a second motion on another ground." Ennega v. Starns, 677 F.3d 766, 773 (7th Cir. 2012); see also Fed. R. Civ. P. 12 advisory committee notes (1966) (noting that Rule 12(g) furthers the policy of "forbidding successive motions.").

According to Plaintiffs, Aurora waived its right to advance the arguments set forth in its present motion to dismiss by failing to raise them in a Rule 12 motion prior to answering the *original* Consolidated Complaint. This contention lacks merit. "[A]n amended complaint supersedes the original complaint and renders it without legal effect[.]" Lacey v. Maricopa Cnty., 693 F.3d 896, 928 (9th Cir. 2012) (en banc). Relying on that rule, courts within this Circuit have permitted defendants to bring motions to dismiss in response to an amended pleading based on arguments previously made in a prior motion to dismiss and to raise new arguments that were not previously made. See In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV Television Litig., 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010) ("When Plaintiffs filed the [First Amended Consolidated Complaint], it superseded their previous complaint, and Sony was therefore free to move again for dismissal."); Stamas v. Cnty. of Madera, No. CV F 09-0753 LJO SMS, 2010 WL 289310, at *4 (E.D. Cal. Jan. 15, 2010) ("[A]n amended pleading is a new round of pleadings ... [and] is subject to the same challenges as the original (i.e., motion to dismiss, to strike, for more definite statement).").

Plaintiffs also contend that Aurora's motion is nothing more than a thinly-veiled attempt to circumvent this Court's limit of fifteen pages on motions (other than motions for summary judgment). Although Aurora's present motion is within the applicable page limits, Plaintiffs point out that Aurora previously filed two motions to dismiss (one each in the Pinel and Chao cases prior to consolidation) as well as a motion for judgment on the pleadings in response to the original Consolidated Complaint. Plaintiffs complain that Aurora has had ample opportunity to challenge the sufficiency of the pleadings and that its present motion is, in effect, an extension of their earlier motions to dismiss. Pls.' Opp'n at 6. Although Plaintiffs' frustration with Aurora's incessant motion practice is

understandable, the fact remains that, for the reasons stated above, Aurora is entitled to bring another motion to dismiss in response to a newly-filed pleading. The Court therefore is unpersuaded by Plaintiffs' contentions that the instant motion is procedurally improper.

### B. SUBSTANTIVE MERITS

The crux of Aurora's motion is that Plaintiffs' Amended Consolidated Complaint presents an entirely new basis of liability that was not previously alleged in Plaintiffs' prior pleadings. According to Aurora, the original Consolidated Complaint was based on the theory that Aurora foreclosed on borrowers without first providing them with an "opportunity to cure" their default. Aurora claims that the term "opportunity to cure" was previously defined as *notice to the borrower* that their loan modification request had been denied. In the Amended Consolidated Complaint, however, Plaintiffs allegedly changed the definition of "opportunity to cure" to mean "timely review" of a loan modification request. In Aurora's view, Plaintiffs' claims are now predicated on the theory that "Aurora did not complete loan modification reviews quickly enough." Mot. at 5. Though not disputing Plaintiffs' right to make such changes, Aurora contends that the Amended Consolidated Complaint "adds zero allegations to substantiate" these changes. Id. at 4.

The Court disagrees that Plaintiffs' amendments to the pleadings fundamentally alter their theory of liability in this action. Despite Aurora's assertions to the contrary, the speed at which Aurora processed loan modification requests is not the basis of Plaintiffs' claims. The gist of Plaintiffs' claims remains as it was before—namely, that Aurora falsely promised borrowers that, by entering into Workout Agreements, they would have the opportunity to cure their loan default and avoid foreclosure. The new allegations that Aurora did not, and indeed, could not, process a loan modification request during the term of the Workout Agreement merely provide further factual support for the general proposition that Aurora did not allow nor did it have any intention of allowing Plaintiffs to cure their defaults. From Plaintiffs' perspective, the bottom line is that Aurora did not provide a loan modification—or any other workout option for borrowers to avoid

foreclosure.[3] Since the gravamen of Plaintiffs' claims remains unchanged, the Court finds that the underlying premise of Aurora's current motion to dismiss and strike is without merit.

### C. SETTLEMENT

The parties have expended considerable time and resources in litigating this case and have had ample opportunity to conduct discovery. This case also has consumed a significant amount of judicial resources. The Court has held numerous hearings on discovery matters and has now ruled on four substantive motions challenging the pleadings and. Having now rejected Aurora's most recent motion to dismiss, the Court notes that the next step in this action is to consider Plaintiffs' renewed motion for class certification. However, before the Court entertains such motion, which will require the further expenditure of judicial resources, the parties shall first make a good faith effort to resolve their dispute without the need for additional judicial intervention. To facilitate the settlement process, the Court refers the instant action to Magistrate Judge Nathanael Cousins for a mandatory settlement conference. See Burden v. SelectQuote Ins. Servs., No. C 10-5966 SBA, 2012 WL 2119405, at *5 (N.D. Cal. June 11, 2012) (referring matter for mandatory settlement conference in a heavily litigated wage and hour class action prior to adjudicating motion for class certification; parties successfully settled dispute).[4]

//
//
//

---

[3] Aurora attempts to make much of the modifications to the class definitions, claiming that class membership is now dependent on specifically *when* the loan modification review took place. Mot. at 3-4. Not so. What ostensibly *is* critical, as it was in the prior pleading, is that the putative class members were denied an opportunity to cure their defaults and avoid losing their homes to foreclosure.

[4] Plaintiffs' motion for class certification shall be held in abeyance pending completion of the forthcoming settlement conference and is administratively terminated. Dkt. 174, 179, 185. In the event the action does not settle, the Court will resolve the motion based on the papers submitted. See Civ. L.R. 7-1(b).

## IV.  CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Aurora's Motion to Dismiss in Part the Amended Class Action Complaint and to Strike the Class Definition is DENIED.

2. This matter is REFERRED to Magistrate Judge Nathanael Cousins for a mandatory settlement conference to take place within sixty (60) days of this Order, or such other time deemed reasonably appropriate by Magistrate Judge Cousins.

3. The parties shall appear for telephonic Case Management Conference on **December 18, 2013, at 2:45 p.m.**  At least seven (7) calendar days prior to the Case Management Conference, the parties shall meet and confer and file a Joint Case Management Conference Statement that complies with the Standing Order for All Judges of the Northern District of California and the Standing Orders of this Court.  See http://www.cand.uscourts.gov/sbaorders. Plaintiffs' counsel shall be responsible for filing the Joint Case Management Statement and setting up the conference call.  At the date and time indicated above, Plaintiffs' counsel shall call (510) 637-3559 with all parties on the line.  NO PARTY SHALL OTHERWISE CONTACT CHAMBERS DIRECTLY WITHOUT PRIOR AUTHORIZATION OF THE COURT.

4. This Order terminates Docket 140, 174, 179 and 185.

IT IS SO ORDERED.

Dated: September 30, 2013

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge