STEVE W. BERMAN (*Pro Hac Vice*)
THOMAS E. LOESER (202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

ALI ABTAHI (224688)
IDENE SAAM (258741)
ABTAHI LAW FIRM
1012 Torney Avenue
San Francisco, CA 94129
Telephone: (415) 639-9800
Facsimile: (415) 693-9801
aabtahi@abtahilaw.com
isaam@abtahilaw.com

*Attorneys for Plaintiffs
and the Proposed Class*

[Additional counsel listed on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MAUDER and ALICE CHAO; DEOGENESO and GLORINA PALUGOD, and MARITZA PINEL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AURORA LOAN SERVICES, LLC,<br><br>Defendant. | No. 10-cv-03118-SBA<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  July 15, 2014<br>Time:  1:00 p.m.<br>Place: Courtroom 1, 4th Floor<br>Judge: Hon. Sandra B. Armstrong |

1         PLEASE TAKE NOTICE that at 1:00 p.m. on July 15, 2014, or as soon as the matter may be

2    heard by the Honorable Saundra B. Armstrong, United States District Court, located at 1301 Clay

3    Street, Oakland, CA 94612, Plaintiffs will and hereby do move the Court pursuant to Rule 23 of the

4    Federal Rules of Civil Procedure for an order: 1) preliminarily approving the proposed class action

5    Settlement Agreement attached as Exhibit A to the Declaration of Thomas E. Loeser;

6    2) preliminarily certifying a settlement class; 3) appointing the named Plaintiffs as class

7    representatives; 4) appointing Hagens Berman Sobol Shapiro LLP, Law Office of Andrew Oldham,

8    Abatahi Law Firm, and Richardson, Patrick, Westbrook & Brickman, LLC as Class Counsel;

9    5) appointing Gilardi & Co., LLC as the Claims Administrator; 6) approving and directing the

10   dissemination of the proposed Notice of Settlement by the Claims Administrator, substantially in the

11   form of Exhibit 2 to the Declaration of Thomas E. Loeser; 7) approving the proposed notice program

12   set forth in the Settlement Agreement; and 8) adopting the proposed schedule for the Final Approval

13   Hearing and other deadlines related to the notice and administration of the settlement.

14        This motion is based on the points and authorities cited in the accompanying memorandum,

15   the contemporaneously-filed Declaration of Thomas E. Loeser, the arguments of counsel; and all

16   files, records and proceedings in this matter.

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    PROCEDURAL HISTORY ............................................................................... 2

III.   TERMS OF SETTLEMENT .............................................................................. 4

     A.    The Settlement Class ............................................................................. 5

     B.    Monetary Relief to Settlement Class Members ..................................... 6

     C.    Release of Claims Against Defendants .................................................. 7

     D.    Attorneys' Fees and Costs ..................................................................... 7

     E.    Class Representative Service Awards ..................................................... 7

IV.   SUMMARY OF NOTICE PROCESS .............................................................. 7

V.    ARGUMENT ..................................................................................................... 9

     A.    The Court's Role in Approving a Class Action Settlement ................... 9

     B.    The Proposed Settlement Merits Preliminary Approval ...................... 10

           1.    The Settlement Resulted From Arm's Length and
                 Informed Negotiations ................................................................. 10

           2.    The Settlement Provides Substantial Benefits to Class
                 Members And Falls Well Within The Range For
                 Preliminary Approval ................................................................... 12

           3.    There is No Reversion to Aurora and No Claims
                 Procedure Before Settlement Class Members Will
                 Receive Checks ........................................................................... 14

           4.    The Settlement Does Not Improperly Grant Preferential
                 Treatment To Class Representatives Or Segments Of
                 The Class, and the Releases are Narrowly Tailored to
                 the Claims Asserted in This Lawsuit ........................................... 15

           5.    The Proposed Service Awards to the Class
                 Representatives Are Reasonable ................................................. 15

     C.    The Proposed Settlement Class satisfies Rule 23 ................................ 16

           1.    The Numerosity Requirement is Satisfied ................................... 17

            2.    The Commonality Requirement is Satisfied ................................. 17

            3.    The Typicality Requirement is Satisfied ...................................... 17

1

4.    The Adequacy Requirement is Satisfied .................................................... 18

2        5.    Common Issues Predominate ....................................................................... 19

3        6.    Settlement on a Class-Wide Basis is Far Superior to
              Leaving Borrowers to Fend for Themselves ............................................... 21

4
    D.    The Proposed Notice Satisfies Due Process ......................................................... 22

5
VI.    CONCLUSION .................................................................................................................... 24

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................17

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ...............................................................................19, 21

*Arnold v. Arizona Dep't of Pub. Safety*,
2006 WL 2168637 (D. Ariz. July 31, 2006) ..................................................22

*Bellows v. NCO Fin. Sys., Inc.*
2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ................................................22

*Briggs v. United States*,
2010 WL 1759457 (N.D. Cal. Apr. 30, 2010) ................................................14

*Browning v. Yahoo! Inc.*,
2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ...............................................23

*Carson v. American Brands, Inc.*,
450 U.S. 79 (1981) .........................................................................................12

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) .........................................................................22

*Churchill Vill. LLC v. GE*,
361 F.3d 566 (9th Cir. 2004) .........................................................................22

*City P'ship Co. v. Atlantic Acquisition Ltd., P'ship.*,
100 F.3d 1041 (1st Cir. 1996) ..................................................................10, 11

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) .........................................................................9

*Colesberry v. Ruiz Food Prods., Inc.*,
2006 WL 1875444 (E.D. Cal. June 30, 2006) ...............................................23

*Collins v. Cargill Meat Solutions Corp.*,
274 F.R.D. 294 (E.D. Cal. 2011) ...................................................................10

*Ellis v. Costco Wholesale Corp.*,
285 F.R.D. 492 (N.D. Cal. 2012) ...................................................................17

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .........................................................................18

*Farinella v. PayPal, Inc.*,
    611 F. Supp. 2d 250 (E.D.N.Y. 2009) ...................................................................... 23

*Gacy v. Gammage & Burnham*,
    2005 WL 3455105 (D. Ariz. Dec. 15, 2005) ........................................................... 23

*General Tel. Co. of the S.W. v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................... 18

*Glass v. UBS Fin. Servs., Inc.*,
    2007 WL 221862 (N.D. Cal. 2007) .......................................................................... 15

*Gutierrez v. Wells Fargo Bank, N.A.*,
    2008 WL 4279550 (N.D. Cal. Sept. 11, 2008) ............................................. 17, 19, 21

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................... 10, 17, 18

*Hofstetter v. Chase Home Fin. LLC*,
    2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) ......................................................... 21

*In re Apple Computer, Inc. Derivative Litig.*,
    2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ........................................................... 14

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    2010 WL 3190108 (N.D. Ill. Aug. 11, 2010) .......................................................... 23

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................................... 10

*In re Charles Schwab Corp. Secs. Litig.*,
    2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) .............................................. 13, 14, 15

*In re Checking Account Overdraft Litig.*,
    275 F.R.D. 666 (S.D. Fla. 2011) ....................................................................... 17, 21

*In re Excess Value Ins. Coverage Litig.*,
    2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. July 30, 2004) ......................................... 11

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ......................................... 11

*In re LDK Solar Secs. Litig.*,
    2010 WL 598361 (N.D. Cal. Feb. 17, 2010) ........................................................... 13

*In re Med. Capital Secs. Litig.*,
    2011 WL 5067208 (C.D. Cal. July 26, 2011) .......................................................... 21

*In re Medical X-Ray Film Antitrust Litig.*,
    1997 U.S. Dist. LEXIS 21936 (E.D.N.Y. Dec. 10, 1997) ........................................ 10

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................................ 15

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ........................................................................ 23

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   177 F.R.D. 216 (D.N.J. 1997) ........................................................................ 23

*In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Practices & Prods. Liab.*
   *Litig.*,
   2010 WL 1993817 (S.D.N.Y. May 19, 2010) ................................................. 23

*In re Tableware Antitrust Litig.*,
   2007 WL 4219394 (N.D. Cal. Nov. 28, 2007) ............................................... 13

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007)......................................................... 10

*Kay v. Wells Fargo & Co.*,
   247 F.R.D. 527 (N.D. Cal. 2007) .................................................................. 19

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) ........................................................................ 21

*Leyva v. Medline Indus.*,
   716 F.3d 510 (9th Cir. 2013) ........................................................................ 21

*Local Jt. Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ...................................................................... 19

*Marilley v. Bonham*,
   2012 WL 851182 (N.D. Cal. Mar. 13, 2012) ................................................. 18

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) ................................................................ 17, 18

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ...................................................................................... 22

*Officers for Justice v. Civil Serv. Com.*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................ 12

*Rankin v. Rots*,
   2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006) ............................. 12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..................................................................... 9, 16

*UAW v. GMC,*
    497 F.3d 615 (6th Cir. 2007) ........................................................................................ 12

*Van Vranken v. Atlantic Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995) ...................................................................... 15, 16

*Wright v. Linkus Enter.,*
    259 F.R.D. 468 (E.D. Cal. 2009) ................................................................................. 23

#### OTHER

FED. R. CIV. P. 23 ............................................................................................................. *passim*

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.311 (2004) ................................... 22

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004) .............................. 9, 10

### I.      INTRODUCTION

Plaintiffs Mauder and Alice Chao, Degeneso and Glorina Palugod, and Maritza Pinel ("Plaintiffs") submit this Unopposed Motion for Preliminary Approval of Class Action Settlement. Plaintiffs seek preliminary approval of their Amended Settlement Agreement and Release ("Agreement"), which resolves claims arising from the Special Forbearance Agreement ("SFA") practices of Defendant Aurora Loan Services, LLC, on or after June 8, 2006 ("Class Period"). The proposed class definitions as set forth in Paragraphs 2(bb) and 2(cc) of the Agreement are: (1) the "Rosenthal Act Settlement Class," which consists of "all California residential mortgage customers to whom Aurora sent the 'Workout Agreement,' later called the 'Foreclosure Alternative Agreement,' or substantially identical correspondence on or after June 8, 2009." And (2) the "Restitution Settlement Class," which consists of "All California residential mortgage customers to whom Aurora sent the 'Workout Agreement,' later called the 'Foreclosure Alternative Agreement,' or substantially identical correspondence on or after June 8, 2006, who made the trial payments required by their final Workout Agreement, did not thereafter enter into a repayment plan or HAMP trial payment plan, were not thereafter offered a loan modification by Aurora, and were thereafter foreclosed upon."[1] There is also an Excess Payment Subclass which consists of: "All members of the Restitution Settlement Class who made additional payments to Aurora after the term of the Workout Agreement had expired." Agreement, ¶ 2(n).

The Agreement provides for substantial monetary relief, including that Aurora will pay within fifteen (15) business days after the Court's Preliminary Approval Order, the sum of Five Million Two Hundred Fifty Thousand Dollars ($5,250,000.00) (the "Gross Settlement Fund"). The Gross Settlement Fund is a *non-reversionary* common fund; no amount will revert to Aurora at any time. Following the deduction of any Court-approved service awards to the Named Plaintiffs, attorneys' fees and costs to Class Counsel, and the Claims Administrator's fees and costs, the remaining amounts will be distributed as follows: (1) the "Rosenthal Act Net Settlement Fund" will be distributed to Rosenthal Act Settlement Class Members equally; and (2) the "Restitution Net

---

[1] Rosenthal Act Settlement Class Members and Restitution Settlement Class Members are collectively referred to as "Settlement Class Members."

Settlement Fund" will be distributed to Restitution Settlement Class Members on a *pro rata* basis in relation to the payments they made to Aurora.

The proposed settlement is fair, reasonable and adequate, and merits preliminary approval so that notice can be issued to the Settlement Class Members. Specifically:

- The settlement was negotiated at arm's length with the assistance of Magistrate Judge Nathaniel Cousins, without any collusion;

- The releases in the Agreement are narrowly tailored to the claims asserted in the case, members of only the Rosenthal Act Settlement Class release only claims under the Rosenthal Act;

- There is no claims procedure; Settlement Class Members who do not opt-out will be sent a check;

- Settlement Class Members will have the opportunity to document their payments to Aurora if Aurora's records pertaining to their account are incomplete;

- There will be no reversion of any settlement funds to Aurora at any time;

- The settlement is not conditioned on the Court's approval of attorneys' fees or costs, or any service award or payment to the Named Plaintiffs; and

- The Agreement provides for notice of the settlement by first class mail, and provides Settlement Class Members with 60 days to object or exclude themselves.

Accordingly, Plaintiffs request that the Court preliminarily approve the Agreement.

## II.      PROCEDURAL HISTORY

Plaintiffs filed separate class action complaints in August 2010 (No. 10-cv-3118 (N.D. Cal.) and No. 10-cv-3383 (N.D. Cal.)).  By Orders dated August 30, and September 13, 2011, the Court largely denied motions to dismiss in the separate cases. Plaintiffs thereafter filed a consolidated complaint incorporating the claims upheld by the Court in the original separate class actions. A Second Consolidated Amended Complaint ("SCAC") was filed on October 4, 2012, and is the operative complaint in this Action. Declaration of Thomas E. Loeser in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Loeser Decl."), ¶ 6.

The SCAC asserts claims against Aurora for (1) Rescission and Restitution (based on fraudulent inducement); (2) Rescission and Restitution (based on failure of consideration); (3) Breach of Contract; (4) Breach of the Implied Covenant of Good Faith and Fair Dealing; (5) Unjust Enrichment; (6) Unfair Debt Collection Practices ("Rosenthal Act"), CAL. CIV. CODE §§ 1788, *et seq.*; and (7) the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200,

*et seq.* Among other things, Plaintiffs alleged that Aurora's Workout Agreements fraudulently induced Plaintiffs and the Settlement Class to make payments to Aurora under the false hope that Aurora would provide an opportunity for Settlement Class Members to cure the arrearages on their mortgage loans with Aurora.

The case was vigorously litigated for over three years. The Named Plaintiffs were each deposed and produced extensive discovery. Aurora's Rule 30(b)(6) witnesses were deposed and Aurora produced hundreds of thousands of pages of discovery, all of which was reviewed by Plaintiffs. There were four separate Rule 12 motions, numerous discovery motions and disputes, contested motions for leave to amend, motions to strike, and class certification motions. There were innumerable telephonic meet and confer sessions between the parties. Loeser Decl., ¶ 8.

In discovery, Aurora: (a) responded to numerous written discovery requests made by Plaintiffs and produced extensive written discovery to Plaintiffs; (b) produced extensive loan level data (the "Class Data") to Plaintiffs concerning its customers who were sent Workout Agreements during the Class Period (*i.e.*, the Settlement Class Members); and (c) produced Rule 30(b)(6) witnesses for deposition on certain key topics. Loeser Decl., ¶ 9.

In particular, the Class Data contained detailed information regarding, *inter alia*, Settlement Class Members' Workout Agreements with Aurora, including: (a) the date of Workout Agreements sent to Settlement Class Members; (b) the amount of any payments made to Aurora under Workout Agreements; (c) the amount of any payments made after the term of a Workout Agreement had expired; (d) whether the borrower was given a HAMP trial plan or Aurora repayment plan after completion of the Workout Agreement; and (d) whether the property underlying the loan associated with a Workout Agreement was foreclosed, as well as additional data. Loeser Decl., ¶ 10.

The Court has not yet certified any classes. Plaintiffs filed a renewed Motion for Class Certification, which the Court has held in abeyance. On November 19, 2013, by order of Court, the Parties and their counsel participated in a Settlement Conference before United States Magistrate Judge Nathaniel Cousins (the "Settlement Conference Process"). In reaching this Agreement, Class Counsel cooperated with each other and coordinated their efforts and resources to further the best interests of the Settlement Class Members. Loeser Decl., ¶¶ 11-12.

1

2

3

4

5

6

7

8

9

10

11

The Settlement Conference Process has continued to the present. The Parties did not reach an agreement in the initial all-day mediation session with Magistrate Judge Cousins, but continued their discussions thereafter. The Parties eventually reached an agreement in principle and, on December 20, 2013, executed a Memorandum of Understanding with respect to certain material terms. The Parties executed a settlement agreement in mid-February, 2014, but thereafter, a revised data set from Aurora required renegotiation of certain terms of the agreement. The Parties worked diligently to reach a revised resolution in light of the revised data from Aurora. As a result of this Settlement Conference Process, the analysis of the extensive discovery and revised Class Data produced by Aurora, and subsequent negotiations between the Parties with respect to the terms and conditions of this Agreement, the Parties agreed to settle this Action according to the terms of the Agreement attached as Exhibit A to the Declaration of Thomas E. Loeser.

12

13

14

15

16

17

18

19

20

21

This was a vigorously litigated lawsuit. Likewise, the Parties and their counsel have negotiated vigorously with each other and at arm's length. The Parties have investigated the facts relating to the claims alleged in the Named Plaintiffs' original Complaints and the Second Consolidated Amended Complaint, and have made a thorough study of the legal principles applicable to the claims asserted against Defendant. Based upon Class Counsel's investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including the Parties' assessment of the uncertainties of litigation and the relative benefits conferred upon the potential Settlement Class Members pursuant to this Agreement, Class Counsel have concluded that the Settlement with Aurora on the terms set forth in the Agreement is fair, reasonable, adequate and in the best interests of the Plaintiffs and the Settlement Class Members. Loeser Decl., ¶ 14.

22

### III.     TERMS OF SETTLEMENT

23

24

25

26

27

The Agreement resolves the claims of Plaintiffs and the Settlement Class Members relating to Aurora's SFA practices and provides for substantial monetary relief that would not otherwise be available. Because Aurora is no longer an operating entity and no longer services mortgage loans, there was no benefit to obtaining injunctive relief on behalf of the Settlement Class Members. The key terms of the Agreement are described below.

28

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 4
No. 10-cv-03118-SBA

**A.** **The Settlement Class**

The Agreement provides relief to:

The "Rosenthal Act Settlement Class," which consists of "all California residential mortgage customers to whom Aurora sent the 'Workout Agreement,' later called the 'Foreclosure Alternative Agreement,' or substantively identical correspondence on or after June 8, 2009."

And

The "Restitution Settlement Class," which consists of "All California residential mortgage customers to whom Aurora sent the "Workout Agreement," later called the "Foreclosure Alternative Agreement," or substantively identical correspondence on or after June 8, 2006, who made the trial payments required by their final Workout Agreement, did not thereafter enter into a repayment plan or HAMP trial payment plan, were not thereafter offered a loan modification by Aurora, and were thereafter foreclosed upon."

Agreement, ¶ 2(bb) and (cc).

There is also the "Excess Payment Settlement Subclass" which contains: "All members of the Restitution Settlement Class who made additional payments to Aurora after the term of the Workout Agreement had expired." Agreement, ¶ 2(n).

The Class Data indicates 15,372 California Aurora customers were sent SFAs on or after June 8, 2006. Of these, 13,713 were sent SFAs on or after June 8, 2009, and are thus Rosenthal Act Settlement Class Members. Of the 15,372 California Aurora customers who were sent SFAs on or after June 8, 2006, Aurora's records show that 2,017 were designated by Aurora as having "kept" their SFA (*i.e.*, made all the payments required under their SFA), did not thereafter enter into a repayment plan or HAMP trial plan, were not thereafter offered a loan modification by Aurora, and were thereafter foreclosed. These borrowers are Restitution Settlement Class Members. Of these, Aurora's records show that 1,239 made additional payments after the end of their SFA, and are thus Excess Payment Subclass Members. Loeser Decl., ¶ 16.[2]

---

[2] While no claim form is required for Settlement Class Members to receive Settlement Damages, the Class Notice will be sent to all Aurora California borrowers who were sent the SFA during the Restitution Settlement Class Period. Class Notice recipients will have the opportunity to return documentation showing that they (a) received an SFA on or after June 8, 2009, in which case they will become Rosenthal Class members, as such documentation evidences, and/or (b) made all their SFA payments to Aurora, and otherwise fit the Restitution Class definition, in which case they will become Restitution Settlement Class Members and/or Excess Payment Subclass Members, as such documentation evidences.

**B.**     <u>Monetary Relief to Settlement Class Members</u>

The Agreement provides for a non-reversionary (*i.e.*, no amount will ever revert to Aurora under any circumstances) Gross Settlement Fund of Five Million, Two Hundred Fifty Thousand Dollars ($5,250,000.00). Agreement, ¶ 2(q) (defining "Gross Settlement Fund"). This Fund will be used to provide monetary relief to all Settlement Class Members who do not timely opt-out of the Settlement ("Eligible Settlement Class Members"), after deducting any amounts approved by the Court for (a) service awards for the Named Plaintiffs for their efforts in bringing and prosecuting this matter; (b) attorneys' fees and costs to Class Counsel; and (c) the fees and costs of the Claims Administrator (the "Net Settlement Fund"). Agreement, ¶ 2(r) (defining the "Net Settlement Fund" to be used to make payments to Settlement Class Members).

The Agreement provides that the Net Settlement Fund shall be distributed to Eligible Settlement Class Members as each Eligible Class Member's "Settlement Damages" as calculated by Class Counsel based upon the Class Data. The Settlement Damages is the sum of: (a) Rosenthal Act Settlement Damages; and (b) Restitution Settlement Damages. Agreement, ¶ 22. Class Counsel shall calculate the total Settlement Damages for all Eligible Settlement Class Members based on the Class Data and any additional information provided by class members in response to the Class Notice by the date of Plaintiffs' Final Approval Motion, and shall determine the amount owed to each Eligible Settlement Class Member based upon their Settlement Damages. Agreement, ¶ 23.

Eligible Class Members will have 120 days from the date of mailing to cash their check. Agreement, ¶ 27. If the remaining funds after this process exceed 5% of the Rosenthal Act Net Settlement Fund or the Restitution Net Settlement Fund, the Claims administrator will make a second distribution to Eligible Class Members who cashed their settlement checks on a *pro rata* basis based on each such Eligible Class Members' Settlement Damages in proportion to the total amount remaining in the respective Net Settlement Fund. Agreement, ¶ 28. All unclaimed monies in the Rosenthal Act Net Settlement Fund or the Restitution Net Settlement Fund after the second distribution or if, after the first distribution, there is less than five percent (5%) of either Net Settlement Fund remaining, shall be escheated to the State of California. No unclaimed funds will revert to Aurora. Agreement, ¶ 29.

**C.      Release of Claims Against Defendants**

In exchange for the relief provided by the Settlement, Settlement Class Members who do not timely exclude themselves by opting out will release Aurora Loan Services LLC and each of its past, present and future parents, affiliated entities and each and all of their executors, predecessors, successors and assigns (Agreement, ¶ 54), from all claims actually made or that could have been made (Agreement, ¶ 56) on behalf of Settlement Class Members (Agreement, ¶ 55) based on the facts asserted in the SCAC. Settlement Class Members who are only members of the Rosenthal Act Settlement Class will only release claims that could have been brought under the Rosenthal Act.

**D.      Attorneys' Fees and Costs**

The Agreement provides that at least 60 days prior to the Final Fairness Hearing, Class Counsel shall file a separate Motion for Attorneys' Fees and Expenses to be paid from the Gross Settlement Fund in accordance with FED. R. CIV. P. 23(h). Agreement, ¶ 33. This Motion is to be considered separately by the Court from its consideration of the fairness and adequacy of this Agreement and any order with respect to this separate Motion shall not affect or delay the approval of this Agreement. *Id.* Class Counsels' attorneys' fees shall not exceed thirty percent of the Gross Settlement Fund plus Class Counsels' actual expenses. *Id.*

**E.      Class Representative Service Awards**

The Agreement provides that, subject to the Court's approval, the Named Plaintiffs (Mauder and Alice Chao, Deogeneso and Glorina Palugod, and Maritza Pinel) shall each receive a service award not exceeding Seven Thousand Five Hundred Dollars ($7,500.00) for their time and effort in bringing and prosecuting this matter. Agreement, ¶ 32.

## IV.      SUMMARY OF NOTICE PROCESS

Subject to the Court's preliminary approval of the Agreement, Settlement Class Members will receive notice of the Settlement by first-class mail to their last-known mailing address,[3] as well

---

[3] The Settlement Agreement provides that "[t]he Parties shall jointly request that the Court modify the Protective Order in the Action to add the Claims Administrator as a person to whom 'Confidential' and 'Highly Confidential' materials can be disclosed." Agreement, ¶ 21. Accordingly, Plaintiffs request – and Aurora does not oppose – this modification, as reflected in the Proposed Order filed herewith. Subject to the Court's modification of the Protective Order, Aurora shall provide contact information for borrowers based on its regularly maintained mortgage banking business records. Agreement, ¶ 28 (defining the term "Class List" such that it includes

as by email (where last known email addresses are available from Aurora or obtained through searches by the Claims Administrator) in the form of the Notice of Settlement attached as Exhibit B to the Loeser Decl. Agreement, ¶ 39. Though Settlement Class Members do not need to do anything to receive benefits of the Settlement based upon Aurora's records of their account, the Notice will include a "Payment Documentation Form" that will allow any Settlement Class Member to document the payments that they made to Aurora, or SFAs they received from Aurora, in the event that Aurora's records are not complete or accurate. *See* Loeser Decl., Ex. B.

The Claims Administrator shall also arrange for a telephone call center facility with a 1-800 number to respond to questions from Settlement Class Members, and shall further establish a website describing the terms of the Settlement and from which Settlement Class Members can download relevant forms, such as the Notice of Settlement, the Agreement, the Court's Preliminary Approval Order, and Class Counsel's Motion for Final Approval and Motion for Attorneys' Fees and Expenses. Agreement, ¶¶ 40-41.

Any Class Notice returned to the Claims Administrator as non-delivered before the deadline for opting out of the Settlement shall be sent to the forwarding address affixed thereto. If no forwarding address is provided, the Claims Administrator shall perform a standard skip trace to attempt to determine the most current mailing address and perform address searches using public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus, and shall resend the Class Notice to that address(es). The undelivered Class Notices shall be resent within five (5) business days after the Claims Administrator receives notice that the Class Notice was undeliverable. Agreement, ¶ 42.

If, after the database searches and remailings described above, there are more than 1,000 Rosenthal Class members or more than 50 Restitution Class members whose addresses and whereabouts remain unknown to the Claims Administrator, the Claims Administrator shall propose a

Settlement Class Members' names; last-known billing addresses; last known telephone numbers; and last known email addresses). The Claims Administrator shall also take reasonable measures to verify and update the Class List, and before mailing the Class Notice, will run the list of Settlement Class Members through the Lexis/Nexis Accurint database. Agreement, ¶ 46.

publication notice procedure designed to reach as many such undeliverable class members as possible using a budget not to exceed 25% of the value of the Settlement Damages that would otherwise have been available to such class members. Agreement, ¶ 42.

Class members may opt-out of or object to the Settlement by sending a request for exclusion or objection to the Claims Administrator within sixty (60) days after the Class Notice is mailed. Agreement, ¶¶ 2(s) (providing for 60-day opt-out deadline); 46 (Requests for Exclusion); 47 (Objections). Pursuant to the terms of the Agreement, the proposed schedule is as follows:

| Event | Due Date |
|---|---|
| Aurora to provide Class List to Class Counsel | 10 business days after the Preliminary Approval Date |
| Complete email notice | Within 30 days of receiving Class List |
| Complete first class mail notice | Within 30 days of receiving Class List |
| Post Notice of Settlement to website | Within 30 days of receiving Class List |
| Motion for Attorneys' Fees and Costs | At least 60 days prior to the Final Fairness Hearing |
| Opt-Out deadline | 60 days after Class Notice Date |
| Objection deadline | 60 days after Class Notice Date |
| Motion for Final Approval | At least 14 days before Final Fairness Hearing |
| Final Fairness Hearing | TBD |
| Distribution Date | Within 30 days of the Effective Date |
| Deadline for cashing checks | 120 days from the Distribution Date |
| Second distribution | Within 20 days after the deadline for cashing checks |

## V.   ARGUMENT

### A.   The Court's Role in Approving a Class Action Settlement

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Rule 23 requires judicial approval of any compromise or settlement of class action claims. FED. R. CIV. P. 23(e).

Such approval is a multi-step, court-supervised process, beginning with preliminary approval. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632, 320-21 (2004). Upon preliminary approval, the class is given notice and the opportunity to object to or opt-out of the

1   settlement. *See id.* At a final fairness hearing following this process, the court considers the

2   distribution process, opt-out data, and any objections, and determines if final approval should be

3   granted. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945-47 (9th Cir. 2011).

4          Thus, preliminary approval is not dispositive of the fairness of the proposed settlement, but

5   simply determines whether it falls within the "range of possible approval." *Collins v. Cargill Meat*

6   *Solutions Corp.*, 274 F.R.D. 294, 301-02 (E.D. Cal. 2011). Preliminary approval simply establishes

7   an "initial presumption" of fairness, such that notice may be provided to the class and the class may

8   have an opportunity to develop a response. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

9   1079 (N.D. Cal. 2007). Preliminary approval is appropriate if: "'[1] the proposed settlement appears

10  to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies,

11  [3] does not improperly grant preferential treatment to class representatives or segments of the class,

12  and [4] falls with[in] the range of possible approval.'" *Collins*, 274 F.R.D. at 301-02 (quoting *In re*

13  *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079).

14  **B.     The Proposed Settlement Merits Preliminary Approval**

15         The Agreement before the Court meets the requirements for preliminary approval. It was

16  agreed to after extensive arm's length negotiations following years of highly contested litigation and

17  extensive discovery, and it falls within the range of possible approval because it meets each of the

18  requirements of substantive and procedural fairness, and there are no grounds to doubt its

19  reasonableness.

20         **1.     The Settlement Resulted From Arm's Length and Informed Negotiations**

21         The Court should look to whether the proposed settlement appears to be the product of

22  "serious, informed and non-collusive negotiations." *In re Medical X-Ray Film Antitrust Litig.*, 1997

23  U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997). In applying this factor, courts give

24  substantial weight to the experience of the attorneys who prosecuted the case and negotiated the

25  settlement. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080; *see also Hanlon v.*

26  *Chrysler Corp.*, 150 F.3d 1011, 1038 (9th Cir. 1998). When a settlement is negotiated at arm's

27  length by experienced counsel, there is a presumption that it is fair and reasonable. *See In re*

28  *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080; *City P'ship Co. v. Atlantic Acquisition Ltd.*,

*P'ship.*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").[4] Courts may also consider whether the settlement was reached with the assistance of a mediator. *See In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("[m]ost significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator").

Here, the proposed Agreement is the product of extensive, arm's-length negotiation by informed and experienced counsel with the assistance of an experienced jurist acting as a neutral mediator. Loeser Decl., ¶¶ 12-14, 19-21. Following three years of contentious litigation and extensive discovery, Plaintiffs personally and their counsel participated with Aurora in a settlement process that included an all-day in person session with Magistrate Judge Cousins and multiple following telephone conversations. *Id.* As described above, Class Counsel obtained extensive discovery and the Class Data from Aurora through discovery and extensively investigated the applicable law as applied to the relevant facts discovered in this action, and the potential defenses thereto. *Id.* This included the review of Aurora's key policy documents at issue, as well as a comprehensive analysis of Aurora's loan-level data by Class Counsel, prior to entering into any Agreement. *Id.* When Aurora provided revised information, the Parties revisited their prior agreement and undertook significant additional negotiations in order to arrive at the Agreement. In addition, Plaintiffs deposed multiple Rule 30(b)(6) designees of Aurora regarding all aspects of Aurora's policies and practices concerning SFAs.

Though in Plaintiffs' view the claims alleged in this litigation are strong, there are obviously risks and challenges as well. Aurora, for example, has sold its entire loan servicing portfolio and is no longer operating as a loan servicer. Loeser Decl., ¶ 23. It is unclear what, if any, assets of Aurora

---

[4] *See also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS 14337, at *2 (C.D. Cal. June 10, 1992) (finding that the belief of counsel that the proposed settlement represented the most beneficial result for the class was a compelling factor in approval of the settlement); *In re Excess Value Ins. Coverage Litig.*, 2004 U.S. Dist. LEXIS 14822, at *34 (S.D.N.Y. July 30, 2004) ("Where the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.") (internal quote and citation omitted).

would be available to pay a judgment would Plaintiffs have continued the already lengthy adversarial litigation process. *See id.* Aurora filed four dispositive motions which, while denied under the Rule 12 standard, nonetheless portend many seemingly strong arguments available to Aurora under the less rigorous Rule 56 standard. Further, Aurora has vigorously contested that this case can be certified as a class action, and other courts have agreed with several of Aurora's key arguments. Plaintiffs disagree, of course, and contend that a trier of fact could find Aurora liable for the damages alleged in the complaint on a class-wide basis. These are examples of disputes that could have a very significant effect on the scope of the case. As the Ninth Circuit has observed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

Based upon Class Counsel's investigation, legal evaluation and experience, and taking into account the contested legal and factual issues involved, including their assessment of the uncertainties of litigation and the relative benefits conferred upon the Settlement Class Members pursuant to the Agreement, Class Counsel have concluded that this settlement is fair, reasonable, adequate and in the best interests of Plaintiffs and the Settlement Class Members.

### 2.      The Settlement Provides Substantial Benefits to Class Members And Falls Well Within The Range For Preliminary Approval

When evaluating the adequacy of a settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands*, *Inc.*, 450 U.S. 79, 88 n.14 (1981). Nor should a court "substitute its business judgment for that of the parties." *Rankin v. Rots*, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006).[5] This complex case involves a range of highly disputed issues. In particular, the disputed issues include, among others, Plaintiffs' ability to prove Aurora's improper motives; whether Aurora timely notified customers of modification denials; and the amount of damages. While Plaintiffs believe they have meritorious claims, Aurora denied, and continues to deny, Plaintiffs' allegations.

---

[5] As the Sixth Circuit explains: "Our task is not to decide whether one side is right or even whether one side has the better of the[] arguments. Otherwise, we would be compelled to defeat the purpose of a settlement in order to approve a settlement." *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007).

As part of the compromise embodied in any settlement, however, and as a product of the arm's-length negotiations that took place between the parties, the Agreement yields extremely significant benefits to Settlement Class Members.

The Agreement provides for substantial compensation for Settlement Class Members, with a non-reversionary Gross Settlement Fund of $5,250,000.00. Monetary compensation will be provided to all Settlement Class Members who do not exclude themselves in relation to their actual damages, without the need to return a claim form. While the class action damages cap of $500,000 under the Rosenthal Act will necessarily result in a modest payment to those who are *only* Rosenthal Act Settlement Class Members – likely in the range of $25[6] – Restitution Settlement Class Members will receive significant amounts – on average, exceeding $1,600. Moreover, this is not a class settlement in which a large amount will revert to an uninterested *cy pres* entity. Rather, if, following the initial distribution to Settlement Class Members, more than 5% of either Net Settlement Fund remains, a second distribution of those funds will be made to Settlement Class Members who have cashed their initial settlement checks.

Analysis of the Class Data produced by Aurora indicates that approximately $27.7 million was paid to Aurora by California Borrowers under SFAs where Aurora did not later provide a HAMP trial plan or repayment plan, did not offer a loan modification, and the subject property was foreclosed. Loeser Decl., ¶ 27. The Gross Settlement Amount represents a recovery of approximately 19% of this total number. Even using this "best case" scenario as a point of comparison (a figure which does not factor in or account for any of Aurora's defenses, *e.g.*, that the entirety of Settlement Class Members payments to Aurora were already owed under their existing loan agreements, for example, or that Settlement Class Member damages must be reduced by the fair market rental value of the properties while foreclosure was postponed), it is clear that the $5,250,000.00 non-reversionary Gross Settlement Fund is well within the range of reasonableness necessary for preliminary approval.[7]

---

[6] *See* Agreement, ¶ 22.

[7] *See*, *e.g.*, *In re Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011) (approving recovery of 23.4% to California class); *In re Tableware Antitrust Litig.*, 2007 WL 4219394, at *2 (N.D. Cal. Nov. 28, 2007) (settlement representing 4% of estimated single damages was reasonable); *In re LDK Solar Secs. Litig.*, 2010 WL 598361, at *2 (N.D. Cal. Feb. 17,

Finally, and as this Court is well-aware, "prosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery." *In re Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424, at *5. Even if Plaintiffs had prevailed at trial, an appeal would certainly follow. This would result in delayed relief or possibly no relief for years. This is especially important in this case as Aurora is no longer an operating entity, it has no material sources of revenue, and it is likely to be dissolved. Given the terms that were negotiated, a settlement is clearly in the best interest of all parties. The proposed settlement is well within the range of what is reasonable and has no obvious deficiencies. It should therefore be preliminarily approved.

### 3. There is No Reversion to Aurora and No Claims Procedure Before Settlement Class Members Will Receive Checks

Other aspects of the settlement also weigh in favor of preliminary approval. The Agreement does not require Settlement Class Members to file claim forms in order to receive monetary relief in the form of checks. *See Briggs v. United States*, 2010 WL 1759457, at *4 (N.D. Cal. Apr. 30, 2010); *In re Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424, at *6. If Aurora's records are incomplete or inaccurate, however, Settlement Class Members have the opportunity to correct the records by providing documentation of their payments to Aurora. Moreover, in the event that Settlement Class Members fail to deposit their checks, there is no reversion to Aurora. Instead, if the uncashed amounts exceed five percent of the Net Settlement Fund, there will be a second distribution to Settlement Class Members who cashed their settlement checks. If there is still any money remaining in the Net Settlement Fund following this process, those unclaimed funds will be escheated to the State of California. Agreement, ¶ 29. This further demonstrates the proposed settlement is fair, reasonable and adequate.

---

2010) (approving settlement amount that was 5% of potential damages); *In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008) (citing to study of settlements in securities litigation and observing that the average settlement was 2.4% of estimated damages).

1

2

### 4.      The Settlement Does Not Improperly Grant Preferential Treatment To Class Representatives Or Segments Of The Class, and the Releases are Narrowly Tailored to the Claims Asserted in This Lawsuit

3

4

The relief provided in the settlement will benefit all Settlement Class Members. All

5

Settlement Class Members will, as explained in the proposed Notice of Settlement, share in the Net

6

Settlement Fund on a *pro rata* basis, depending on their actual damages as calculated by Class

Counsel.

7

In addition, the applicable class release is limited to the claims made or which could have

8

been made based on the facts asserted in the SCAC. Agreement, ¶¶ 56-7. Accordingly, the "scope of

9

the class settlement release of claims is reasonable and sufficiently limited." *In re Charles Schwab*

10

*Corp. Secs. Litig.*, 2011 WL 1481424, at *6. It is particularly important to note in this regard that

11

Settlement Class Members who are *only* members of the Rosenthal Act Settlement Class will *only*

12

release claims that they could have brought under the Rosenthal Act.

13

### 5.      The Proposed Service Awards to the Class Representatives Are Reasonable

14

The Agreement provides for small service awards to the Class Representatives ($7,500) as

15

compensation for their services as Class Representatives. Class Representatives were active

16

participants in this contentious litigation for over three years.  They were deposed at length and

17

produced discovery. They attended the mediation session which led to the Agreement, and were

18

consulted throughout the litigation and settlement process. Class Representatives were of substantial

19

assistance to Class Counsel in prosecuting this action on behalf of all of the Settlement Class

20

Members. Loeser Decl., ¶¶ 28-30. The enhancements are reasonable and should be granted. *See*, *e.g.*,

21

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995).

22

The Ninth Circuit and other federal courts have repeatedly approved the award of service

23

payments to class representatives to recognize their time, efforts, and the risks they undertake on

24

behalf of a class. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000);

25

*Glass v. UBS Fin. Servs.*, *Inc.*, 2007 WL 221862, at *16-17 (N.D. Cal. 2007); *Van Vranken*, 901

26

F. Supp. at 300. Relevant factors for the evaluation of the amount of incentive payments made to the

27

class representative include "the actions the plaintiff has taken to protect the interests of the class,

28

the degree to which the class has benefitted from those actions ... and reasonabl[e] fear[s] of

workplace retaliation." *Staton*, 327 F.3d at 977 (citation omitted); *see also Van Vranken*, 901 F.

Supp. at 300 (approving $50,000 participation award for the representative Plaintiff).

Here, the Class Representatives took very real steps to advance the interests of the Settlement

Class Members in this litigation. Loeser Decl., ¶¶ 28-30. They searched their files and produced their

documents and other information they had relating to their claims against Aurora. *See id*. They were

each deposed at length over a three-day period. *See id.* Moreover, they took the extraordinary step of

agreeing to serve as Class Representatives, with all of the attendant duties, and by agreeing to put the

interests of the Class ahead of their own. *See id*. They were kept informed of developments in the

case, and when asked, they were always willing to review documents and filings related to the case

and provide their views and insights. They participated in the mediation and settlement process,

including personally attending the all-day mediation session with Judge Cousins. *See id.* As a result

of their continued efforts, the Settlement Class Members will benefit from substantial monetary

relief. The proposed service payments of $7,500 to each of the Class Representatives fall within the

reasonable range necessary for preliminary approval.

**C.      The Proposed Settlement Class satisfies Rule 23**

The proposed Settlement Class meets all of the requirements of Rule 23.[8]  Under Rule 23(a),

the party seeking certification must first show that "(1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims

or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P.

23(a). Second, the proposed class is required to meet the requirements of at least one of the bases set

forth in Rule 23(b). Importantly, in certifying a settlement class, **the Court is not required to**

**determine whether the action, if tried, would present manageability problems**. *Amchem Prods.*

*v. Windsor*, 521 U.S. 591, 620 (1997). While the Court should conduct a rigorous and undiluted

---

[8] As set forth in the Settlement Agreement (Agreement, ¶ 14), Aurora disputes that a class would be manageable and that a litigation class properly could be certified on the claims asserted in this action. However, solely for purposes of avoiding the risks, expense, inconvenience, and distraction of further litigation, Aurora does not oppose the certification for settlement purposes only of the Rosenthal Act Settlement Class and Restitution Settlement Class pursuant to FED. R. CIV. P. 23(b)(3).

analysis of the requirements of Rule 23 when certifying a class for settlement, the decision rests

soundly within its discretion. *Id*. at 620, 624.

### 1.     The Numerosity Requirement is Satisfied

Class certification requires that the class is so numerous that joinder of all members is

"impracticable." FED. R. CIV. P. 23(a)(1). Here, the Class Data produced by Aurora to Class Counsel

indicates that there are approximately 13,713 Rosenthal Act Settlement Class Members and 2,017

Restitution Settlement Class Members. The class Data indicates that 1,357 Restitution Settlement

Class Members are also in the Excess Payment Subclass. Accordingly, the Settlement Class satisfies

the numerosity requirement.

### 2.     The Commonality Requirement is Satisfied

Commonality requires that "there are questions of law or fact common to the class." FED. R.

CIV. P. 23(a)(2). This requirement is construed "permissively":

> All questions of fact and law need not be common to satisfy the
> rule. The existence of shared legal issues with divergent factual
> predicates is sufficient, as is a common core of salient facts
> coupled with disparate legal remedies within the class.

*Hanlon*, 150 F.3d at 1019.[9]

Here, the Settlement Class presents common issues regarding whether Aurora's SFA policies

and procedures were lawful, appropriate, and authorized under the language in the SFAs and

California law. These common questions are explored in detail in the following discussion of

predominance under Rule 23(b)(3).

### 3.     The Typicality Requirement is Satisfied

The typicality requirement of Rule 23(a) is established where, as here, the claims of the

Plaintiffs arise from the same event or course of conduct that gives rise to the claims of other class

---

[9] *Accord Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012).
"'Even a single [common] question' will suffice to satisfy Rule 23(a)." *Ellis v. Costco Wholesale
Corp.*, 285 F.R.D. 492, 506 (N.D. Cal. 2012) (quoting *Walmart Stores, Inc.*, v. *Dukes*, 131 S. Ct.
2541, 2556 (2011)). *Accord*, *Gutierrez v. Wells Fargo Bank*, *N.A*., 2008 WL 4279550, at *17 (N.D.
Cal. Sept. 11, 2008) (commonality satisfied where "[t]he challenged practice is a standardized one
applied on a routine basis to all customers" by the bank); *In re Checking Account Overdraft Litig*.,
275 F.R.D. 666, 673 (S.D. Fla. 2011) ("The commonality element is generally satisfied when a
plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all
class members.") (internal brackets and quotations marks omitted).

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 17
No. 10-cv-03118-SBA

members, and where the claims are based on the same legal theory. This typicality requirement "tend[s] to merge" with the commonality requirement. *General Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *Meyer*, 707 F.3d at 1041. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *accord*, *Meyer*, 707 F.3d at 1042. Thus, "the typicality requirement … is 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Marilley v. Bonham*, 2012 WL 851182, at *5 (N.D. Cal. Mar. 13, 2012) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009)).

Here, Plaintiffs' claims are typical of the other Settlement Class Members because they result from the same, injurious course of conduct. Plaintiffs' claims are also typical because they all signed form SFAs that do not materially differ from those of other Class Members. Moreover, Plaintiffs are members of the Rosenthal Act Settlement Class, the Restitution Settlement Class and the Excess Payment Subclass.

### 4.    The Adequacy Requirement is Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This requirement hinges on two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 985 (9th Cir. 2011). The answer to both of these questions demonstrates that Rule 23(a)(4) is satisfied here.

The adequacy of representation requirement is met here because Plaintiffs have the same interests as the Settlement Class Members. There is no conflict between Plaintiffs and the Settlement Class in this case, and Plaintiffs' claims are the same as the claims of the Class. Plaintiffs have and will continue to aggressively and competently assert the interests of the Settlement Class.

Moreover, Plaintiffs' Counsel is skilled and experienced in class action litigation. *See* Loeser Decl., ¶¶ 31-32 (attaching firm biographies of each firm seeking to be appointed as Class Counsel,

demonstrating their adequacy). Accordingly, Plaintiffs request that the Court appoint Hagens Berman Sobol Shapiro LLP, Law Office of Andrew Oldham, Abatahi Law Firm, and Richardson, Patrick, Westbrook & Brickman, LLC as Class Counsel for the Settlement Class.

### 5.   Common Issues Predominate

The Supreme Court recently clarified the standard that applies under Rule 23(b)(3). As explained by the Court in *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) "Rule 23(b)(3) … does *not* require a plaintiff seeking class certification to prove that each element of [the] claim is susceptible to classwide proof." *Amgen*, 133 S. Ct. at 1196 (emphasis in original) (internal brackets and quotation marks omitted). Rather, the rule simply requires what it says, *i.e.*, that common questions "*predominate* over any questions affecting only individual [class] members." *Id.* (emphasis in original) (citing FED. R. CIV. P. 23(b)(3)). This predominance requirement is satisfied where common questions present a "significant aspect of the case" that can be resolved for all class members in a single adjudication. *Local Jt. Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands*, *Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (citing *Hanlon*, 150 F.3d at 1022); *Kay v. Wells Fargo & Co.*, 247 F.R.D. 527, 575 (N.D. Cal. 2007). The mere fact that "there will be some individualized issues" does not defeat predominance. *See Gutierrez*, 2008 WL 4279550, at *17; *accord*, *Las Vegas Sands*, 244 F.3d at 1163 (noting "[i]ndividualized issues" but finding that they did not predominate). As noted above, the case presents fundamentally common questions, including, without limitation:

- Whether the Workout Agreements created any legally binding obligation on Aurora;

- Whether the Workout Agreements were void *ab initio* for failure or partial failure of consideration;

- Whether Aurora's failure to provide borrowers an opportunity to reinstate or pay-off their loans renders the Workout Agreements illusory;

- Whether customers' consent to the Workout Agreements was the result of fraud or duress;

- Whether Plaintiffs and Restitution Subclass members are entitled to rescind their Workout Agreements;

▪ Whether, following rescission, Plaintiffs and Restitution Subclass members are entitled to the return of the consideration paid to Aurora under the Workout Agreements;

▪ Whether Aurora violated CAL. CIV. CODE § 1670.5;

▪ Whether Aurora violated CAL. CIV. CODE § 1671;

▪ Whether Aurora violated CAL. CIV. CODE § 2924c(e);

▪ Whether Aurora was a "debt collector" engaging in "debt collection" practices under the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), CAL. CIV. CODE § 1788.2(c);

▪ Whether Aurora violated the Rosenthal Act by using false, deceptive, and misleading statements and omissions in connection with their collection of Plaintiffs' and the Rosenthal Class's mortgage debt;

▪ Whether Aurora breached its obligation of good faith and fair dealing by its failure to provide borrowers an opportunity to reinstate or pay-off their loans prior to foreclosure;

▪ Whether contracts implied in fact were created for members of the Excess Payment Subclass when Aurora required its customers to continue to make payments under the Workout Agreements after such agreements had expired;

▪ Whether Aurora was estopped from foreclosing on Plaintiffs' and Excess Payment Subclass members' homes after telling such Subclass members that foreclosures would be on hold if they continued to make payments under the Workout Agreements after such agreements expired;

▪ Whether Aurora's written representations to homeowners stating that they would have an opportunity to cure upon expiration of the Workout Agreement were "material" under California law;

▪ Whether Aurora's acts and practices described herein constitute unlawful practices under the California Unfair Competition Law ("UCL");

- ▪ Whether Aurora's acts and practices described herein constitute unfair practices under the UCL; and

- ▪ Whether Aurora's acts and practices described herein constitute deceptive practices under the UCL.

These common questions predominate because, in each case, "[t]he challenged practice is a standardized one applied on a routine basis to all customers" by the bank. *See Gutierrez*, 2008 WL 4279550, at *17; *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 676 ("Here, irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [the] Bank's alleged scheme…. Any analysis of this scheme will depend on evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner.") (internal quotation omitted). Moreover, further supporting predominance is the fact that "[c]ourts routinely certify class actions involving breaches of form contracts." *In re Med. Capital Secs. Litig.*, 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) (citing numerous cases); *see also Keele v. Wexler*, 149 F.3d 589, 594-95 (7th Cir. 1998) (citing *Kleiner v. First Nat'l Bank*, 97 F.R.D. 683, 691 (N.D. Ga. 1983)) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action").

### 6. Settlement on a Class-Wide Basis is Far Superior to Leaving Borrowers to Fend for Themselves

As this Court recently recognized in *Hofstetter*, "the class action mechanism is a superior method for resolving these claims[] because the cost of litigation likely would not be justified without aggregating them together." *Hofstetter v. Chase Home Fin. LLC*, 2011 WL 1225900, at *16 (N.D. Cal. Mar. 31, 2011); *accord*, *Leyva v. Medline Indus.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims."). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amgen*, 133 S. Ct. at 1202 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997)).

The same rationale applies here. There is no feasible way that individual class members ever could obtain the extensive recovery that Plaintiffs have obtained, which goes to the heart of the

1    claims in this case. Thus, the interests of the class members would not be served by prosecuting their

2    claims individually.  FED. R. CIV. P. 23(b)(3)(A). The class action mechanism is essential to level the

3    playing field, and as a practical matter, it is the only avenue of redress for the members of the class.

4    *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 960 (9th Cir. 2005) ("[T]he district court did not

5    abuse its discretion in finding that, absent a class action, Class Plaintiffs would have no meaningful

6    redress against [defendant].").

7    **D.    The Proposed Notice Satisfies Due Process**

8         The proposed Notice of Settlement and the proposed notice program satisfy Rule 23 and due

9    process. Rule 23(e)(1) provides "[t]hat the court must direct notice in a reasonable manner to all

10   class members who would be bound by the proposal." FED R. CIV. P. 23(e)(1). A class action

11   settlement notice is "satisfactory if it 'generally describes the terms of the settlement in sufficient

12   detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"

13   *Churchill Vill. LLC v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted). To be substantively

14   acceptable under Rule 23(c)(2), the notice given to a class must be "reasonably calculated, under all

15   the circumstances, to apprise interested parties of the pendency of the action and afford them an

16   opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

17   306, 314 (1950).

18        Here, the proposed Notice of Settlement complies with the requirements of Rule 23(c)(2)(B)

19   and the recommendations contained in Section 21.311 of the MANUAL FOR COMPLEX LITIGATION

20   (Fourth), which suggests that such notice should: (1) describe succinctly the positions of the parties;

21   (2) identify the opposing parties, class representatives, and counsel; (3) describe the relief sought;

22   and (4) explain any risks and benefits of retaining class membership and opting out, while

23   emphasizing that the court has not ruled on the merits of any claims or defenses. The proposed

24   notice thus meets the requirements of Rule 23.[10]

25

26        [10] *See, e.g.*, *Arnold v. Arizona Dep't of Pub. Safety*, 2006 WL 2168637, at *5 (D. Ariz. July 31,
27   2006) (approving notice that "describes the essential terms of the Settlement Agreement, provides
     information regarding attorneys' fees, indicates the time and place of the hearing to consider
     approval of the Settlement Agreement, prominently displays the address and phone number of
28   counsel and the procedure for making inquiries or objections regarding the Settlement
     Agreement"); *Bellows v. NCO Fin. Sys.*, *Inc.* 2008 WL 5458986, at * 3 (S.D. Cal. Dec. 10, 2008)

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 22
No. 10-cv-03118-SBA

Significantly, "[f]or approval, the notice need not have been perfect. Rather it needed to be the 'best notice practicable under the circumstances' and directed 'in a reasonable manner to all members who would be bound.'" *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *7 (N.D. Cal. Nov. 16, 2007) (citing FED R. CIV. P. 23(c)(2) and 23(e)(1)(B)). "Rule 23(e) gives the court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Prods., Inc.*, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006) (citation omitted).

Plaintiffs propose a first class mailing to Settlement Class Members at their last known mailing address – after being updated through the extensive Lexis/Nexis Accurint Database – and by email (where last known email addresses are available). The Claims Administrator will also arrange for a telephone call center facility with a 1-800 number to be active to respond to questions from Settlement Class Members, and shall establish a website describing the terms of the Settlement and posting relevant documents. This meets the requirements of Rule 23.[11]

Class members will be provided 60 days thereafter to opt-out or object to the proposed Settlement, a period well within the range routinely approved by courts. *See*, *e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 240-41 (D.N.J. 1997) (30 to 60 days is a typical opt-out period considered reasonable); *Gacy v. Gammage & Burnham*, 2005 WL 3455105, at *2 (D. Ariz. Dec. 15, 2005) (approving interval of six weeks between mailing of notice and the deadline for opting out). Class Counsel's motion for attorneys' fees and costs will be filed before the deadline for objections, in accord with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, (9th Cir. 2010), and will be made available to Settlement Class Members on the Settlement website.

Finally, Plaintiffs propose that Gilardi & Co., LLC be appointed to serve as the Claims Administrator for the settlement. Class Counsel selected Gilardi based on its extensive experience, responsiveness and pricing. Loeser Decl., ¶¶ 33-34.

---

(approving notice that "directed Class Members to the Settlement Website to obtain information regarding the case and class settlement . . . [and provided a] toll-free telephone number . . .[.]").

[11] *See Wright v. Linkus Enter.*, 259 F.R.D. 468, 475 (E.D. Cal. 2009) (approving mailed notice); *see*, *e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 2010 WL 3190108, at *17 (N.D. Ill. Aug. 11, 2010) (notice plan that included text messages and emails to customers along with publication in *USA Today* satisfied Rule 23); *In re Sony Corp. SXRD Rear Projection Television Mktg.*, *Sales Practices & Prods. Liab. Litig.*, 2010 WL 1993817, at *5 (S.D.N.Y. May 19, 2010) (approving notice plan by email); *Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250, 265 (E.D.N.Y. 2009) (notice plan with notice sent by email to more than 2.2 million Paypal users).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VI.   CONCLUSION

Plaintiffs respectfully request that the Court enter the Proposed Preliminary Approval Order,

preliminarily approve the parties' proposed class action settlement, certify a class for settlement

purposes only, order notice of the Settlement to Settlement Class Members, and grant all such other

relief that the Court deems necessary and appropriate.

Dated:  May 15, 2014

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By  /s/ Thomas E. Loeser
         Thomas E. Loeser
STEVE W. BERMAN (*Pro Hac Vice*)
THOMAS E. LOESER (202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

Andrew Oldham (144287)
**LAW OFFICE OF ANDREW OLDHAM**
901 Campisi Way, Suite 248
Campbell, CA 95008
Telephone: (888) 842-4930

T. Christopher Tuck
**RICHARDSON, PATRICK, WESTBROOK &
BRICKMAN, LLC**
1037 Chuck Dawley Blvd., Bldg. A
PO Box 1007
Mt. Pleasant, SC 29464
(843) 727-6515
ctuck@rpwb.com

Ali Abtahi (224688)
Idene Saam (258741)
**ABTAHI LAW FIRM**
1012 Torney Ave.
San Francisco, CA 94129
Tel: (415) 639-9800
Fax: (415) 639-9801
aabtahi@abtahilaw.com
isaam@abtahilaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2014, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

/s/ Thomas E. Loeser
THOMAS E. LOESER