UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MAUDER and ALICE CHAO; DEOGENESO and GLORINA PALUGOD; And MARITZA PINEL, individually and on behalf all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AURORA LOAN SERVICES, LLC,<br><br>Defendant. | Case No: C 10-3118 SBA<br><br>**ORDER GRANTING UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Dkt. 218 |

Plaintiffs Mauder and Alice Chao and Maritza Pinel (collectively "Plaintiffs") bring the instant consolidated class action lawsuit against Defendant Aurora Loan Services, LLC ("Aurora") alleging, inter alia, that Aurora's "Workout Agreements" fraudulently induced them to make payments to Aurora under the false hope of curing the arrearage on their mortgages. The parties are presently before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Act Settlement. Dkt. 218. Having read and considered the papers filed in connection with the motion, and finding good cause therefore, the Court GRANTS said motion. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. PRIOR PROCEEDINGS

Each of the Plaintiffs purchased homes in California and obtained mortgages serviced by Aurora. Am. Consolidated Class Action Compl. ¶¶ 58-64, 92-97, 116-121, Dkt. 133. In 2008 and 2009, Plaintiffs fell behind on their mortgage payments, and thereafter sought loan modifications from Aurora. Id. ¶¶ 62, 95, 119. After notices of default were recorded against Plaintiffs' properties, Aurora presented Plaintiffs with Workout Agreements as a prerequisite to seeking loan modifications. Id. ¶¶ 35, 65-66, 70, 98, 122. The Workout Agreements required Plaintiffs to make monthly payments, which included legal and other fees outside the principal and interest owed under their mortgages. Id. ¶¶ 72, 101, 126. In return, Aurora promised (1) not to foreclose for the duration of the Workout Agreement, and (2) at the end of the Workout Agreement to provide an opportunity for each Plaintiff to "cure" the loan deficiency through: (a) reinstatement (i.e., bring the loan current); (b) payoff (i.e., refinancing with another lender to pay off the Aurora-serviced loan); (c) modification at the discretion of Aurora; or (d) another workout "option" at the discretion of Aurora. Id. ¶ 3. Plaintiffs aver that the promises made by Aurora were illusory and were part of a scheme to fraudulently extract additional monies from distressed borrowers while providing no tangible benefit to them. Id. ¶¶ 1, 4, 9, 39, 91.

### B. PROCEDURAL HISTORY

Pinel filed a class action complaint in state court which Aurora removed pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Pinel v. Aurora Loan Servs., LLC, No. C 10-3118 SBA. The Chaos and two others subsequently filed a separate class action complaint in this Court against Aurora. Chao v. Aurora Loan Servs., LLC, No. C 10-3383 SBA. After the Court adjudicated Aurora's Rule 12 motions in both cases, the parties agreed to consolidate the actions. Dkt. 79. Plaintiffs filed an Amended Consolidated Class Action Complaint ("Amended Complaint"), which is the operative pleading before the Court. The Amended Complaint alleged eight state law causes of action styled as: (1)

Rescission and Restitution (Fraudulent Inducement); (2) Rescission and Restitution (Failure of Consideration); (3) Breach of Contract; (4) Breach of Contract (Implied Covenant of Good Faith and Fair Dealing); (5) Unjust Enrichment; (6) Unfair Debt Collection Practices (Cal. Civil Code §§ 1788, et seq.); (7) Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.); and (8) Declaratory Relief.

The instant action has been the subject of extensive discovery and motion practice, and vigorously litigated by both sides. In its Order denying in part Aurora's motion to dismiss the Amended Complaint, filed October 1, 2013, the Court referred the action to Magistrate Judge Nathanael Cousins for a mandatory settlement conference. Dkt. 207. Magistrate Judge Cousins conducted the settlement conference on November 19, 2013. Dkt. 209. Though the parties were unable to reach an agreement at that time, to their credit, they continued their discussions and eventually reached an agreement in principle. To that end, the parties executed a Memorandum of Understanding with respect to certain material terms, and eventually executed a settlement agreement. The proposed Amended Settlement Agreement and Release ("Settlement") has been provided to the Court for its review and preliminary approval. Loeser Decl. Ex. A, Dkt. 219-1.

### C.   TERMS OF THE SETTLEMENT

Under the terms of the Settlement, Aurora will pay a Gross Settlement Amount of $5,250,000 on a non-reversionary basis, meaning that the entire amount (less incentive awards, attorneys' fees and costs, and claims administrator expenses) will be distributed to Class Members. Settlement ¶ 2. The Settlement permits Plaintiffs' counsel to request fees based on 30 percent of the Gross Settlement Amount and to seek a $7,500 incentive award for each of the three named Plaintiffs. Id. ¶¶ 32-33.

The Net Settlement Fund (i.e., the Gross Settlement fund less the aforementioned deductions) will be distributed to the following Settlement Classes: (1) a "Rosenthal Act Settlement Class," which consists of: "All California residential mortgage customers to whom Aurora sent the 'Workout Agreement,' later called the 'Foreclosure Alternative Agreement,' or substantially identical correspondence on or after June 8, 2009," id. ¶ 2(bb);

and (2) a "Restitution Settlement Class" consisting of: "All California residential mortgage customers to whom Aurora sent the 'Workout Agreement,' later called the 'Foreclosure Alternative Agreement," or substantially identical correspondence on or after June 8, 2006, who made the trial payments required by their final Workout Agreement, did not thereafter enter into a repayment plan or HAMP trial payment plan, were not thereafter offered a loan modification by Aurora, and were thereafter foreclosed upon," id. ¶ 2(cc). The Settlement also calls for an "Excess Payment Settlement Subclass" which includes: "All members of the Restitution Settlement Class who made additional payments to Aurora after the term of the Workout Agreement had expired." Id. ¶ 2(n).

In exchange for the relief provided by the Settlement, Class Members who do not timely exclude themselves by opting out will release Aurora from all claims actually made or that could have been made Agreement on behalf of Settlement Class Members based on the facts asserted in the Amended Complaint. Id. ¶¶ 54-61. Settlement Class Members who are only members of the Rosenthal Act Settlement Class will only release claims that could have been brought under the Rosenthal Act.

Subject to the Court's preliminary approval of the Settlement, Settlement Class Members will receive a Class Notice of the Settlement by first-class mail to their last-known mailing address, as well as by email (where last known email addresses are available from Aurora or obtained through searches by the Claims Administrator) in the form of the Notice of Settlement attached as Exhibit B to the Declation of Thomas Loeser Decl.  Settlement ¶ 39.[1]  Although Settlement Class Members are not required to take any action to receive their share of the Settlement, the Class Notice will include a "Payment Documentation Form" that will allow any Settlement Class Member to specify the payments that they made to Aurora, or Special Forbearance Agreement ("SFA") they received from Aurora, in the event that Aurora's records are incomplete or inaccurate. The Claims Administrator is to set up a toll-free call center to respond to questions from

---

[1] Settlement Class Members have sixty days from the mailing of the Class Notice to opt-out or object to the Settlement. Settlement ¶¶ 2(s), 46, 47.

- 4 -

Settlement Class Members, and will establish a website describing the terms of the Settlement and from which Settlement Class Members can download relevant forms, such as the Notice of Settlement, the Agreement, the Court's Preliminary Approval Order, and Class Counsel's Motion for Final Approval and Motion for Attorneys' Fees and Expenses. Settlement ¶¶ 40-41.

Any Class Notice returned to the Claims Administrator as non-deliverable before the deadline for opting out of the Settlement shall be sent to the forwarding address affixed thereto. If no forwarding address is provided, the Claims Administrator will perform a standard skip trace to attempt to determine the most current mailing address and perform address searches using public and proprietary electronic resources which collect data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus, and shall resend the Class Notice to those addresses. The undelivered Class Notices shall be resent within five (5) business days after the Claims Administrator receives notice that the Class Notice was undeliverable. Id. ¶ 42. If, after the database searches and remailings described above, there are more than 1,000 Rosenthal Class members or more than 50 Restitution Class members whose addresses and whereabouts remain unknown to the Claims Administrator, the Claims Administrator shall propose a publication notice procedure designed to reach as many such undeliverable class members as possible using a budget not to exceed 25% of the value of the Settlement Damages that would otherwise have been available to such class members. Id. ¶ 44.[2]

## II. DISCUSSION

### A. PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011,

---

[2] In the event that number of Opt-outs exceeds 7% of the total number of Settlement Class members, Aurora may exercise its termination rights under paragraph 46 of the Settlement Agreement, including obtaining a continuance of the Final Approval Hearing as it deems necessary to make its determination as to whether it elects to exercise that option.

1026 (9th Cir. 1998)). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

To make a fairness determination, the district court must balance a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003). In conducting this evaluation, it is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms. See Officers for Justice v. San Fran. Civ. Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

Given that some of the aforementioned "fairness" factors cannot be fully assessed until the Court conducts the final approval hearing, "a full fairness analysis is unnecessary at this stage." Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotations and citation omitted). Rather, preliminary approval of a settlement and notice to the proposed class is appropriate: if "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval...." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation, Second § 30.44 (1985)).

The factors set forth in In re Tableware Antitrust Litigation weigh in favor of preliminarily approving the settlement. First, the settlement resulted from non-collusive negotiations; i.e., a mandatory settlement conference before a Magistrate Judge of this

Court, which, in turn, led to continued negotiations and the execution of the Settlement. Second, there are no obvious deficiencies. To the contrary, the settlement confers tangible monetary benefits to the class—namely, a Gross Settlement Amount of $5,250,000, with no reversion.[3] Third, there is no indication that the settlement improperly grants preferential treatment to class representatives or segments of the class. Finally, based on its experience with other class actions, the Court finds that the settlement appears to fall within the range of possible approval.

The Court notes that Plaintiffs' request for attorneys' fees based on 30 percent of the Gross Settlement Amount is slightly higher than the Ninth Circuit's benchmark of 25 percent  See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011). Similarly, their request for a $7,500 incentive award for each representative Plaintiff is above the $5,000 figure which this Court has determined is presumptively reasonable. See e.g., Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau, No. C 07-0362 MHP, 2009 WL 3562871, *5 (N.D. Cal. Oct. 27, 2009) (rejecting a requested $25,000 incentive payment as "quite high for this district, in which a $5,000 payment is presumptively reasonable"). At the same time, the Court is aware from having presided over the action that this case has been extensively litigated, and undoubtedly has consumed a significant amount of time and resources by counsel and the parties. The Court need not, at this juncture, resolve the specific amount of attorneys' fees and incentive awards, since both matters will be finally determined at the fairness hearing. However, Plaintiffs should be mindful of addressing these issues and providing appropriate detail and documentation in connection with their motion for final approval and/or motion for attorneys' fees.

**B.    CONDITIONAL CLASS CERTIFICATION**

Plaintiffs seek conditional certification of a settlement class under Rule 23(a) and (b)(3). A class action will only be certified if it meets the four prerequisites identified in

---

[3] The Court lauds the parties' extraordinary efforts in reaching a resolution of this difficult case, and for the inclusion of a non-reversionary clause which enhances the benefit to the Settlement Class.

Federal Rule of Civil Procedure 23(a) *and* additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co., 593 F.3d 802, 806 (9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3). Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, the court must conduct a rigorous inquiry before certifying a class. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1977); Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011).

The requirements for class certification are satisfied based on the record presented. First, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ.P. 23(a)(1). The class also must be "ascertainable." Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009). Here, Plaintiffs estimate that there are thousands of identifiable Class Members, which is sufficient to satisfy Rule 23's numerosity and ascertainability requirements. See Immigrant Assistance Project of Los Angeles Cnty. Federation of Labor (AFL-CIO) v. I.N.S. 306 F.3d 842, 869 (9th Cir. 2002) (noting that numerosity requirement has been satisfied in cases involving 39 class members).

Second, "[c]ommonality focuses on the relationship of common facts and legal issues among class members." Id. Rule 23(a)(2) should be construed permissively, meaning that "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. (quoting Hanlon, 150 F.3d at 1019). In the instant case, the issues facing the class arise from common questions relating to the propriety of Aurora's Workout Agreements. This is

sufficient to satisfy the commonality requirement. See Dilts v. Penske Logistics, LLC, 267 F.R.D. 625, 633 (S.D. Cal. 2010) ("Plaintiffs have identified common factual questions, such as whether Defendants' policies deprived the putative class members of meal periods, rest periods, overtime pay, and reimbursement for installation tool expenses, and common legal questions, such as Defendants' obligations under California Labor Code. . . . These commonalities are sufficient to satisfy Rule 23(a)(2).").

Third, Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Here, there is no dispute that the injuries suffered by Plaintiffs are the same as those of the class; namely, making payments under Workout Agreements which allegedly provided no tangible benefit.

Fourth, Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Ellis, 657 F.3d at 985. At this juncture, there is no indication that there is any conflict between the class and Plaintiffs and/or their counsel. In addition, the record shows that they have been vigorously litigating this case in furtherance of the interests of the class.

Finally, Plaintiffs have sufficiently demonstrated that the action is maintainable under Rule 23(b)(3). This provision requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P 23(b)(3). These are referred to as the "predominance" and "superiority" requirements. See Hanlon, 150 F.3d at

1022-23. Rule 23(b)(3) does not require plaintiffs seeking class certification to prove that each element of their claim is susceptible to classwide proof. See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S.Ct. 1184, 1196 (2013). Rather, plaintiffs need only show that "common questions 'predominate over any questions affecting only individual [class] members.'" Id. (quoting Fed. Rule Civ. Proc. 23(b)(3)).

The instant case presents fundamentally common questions arising from the legality of Aurora's Workout Agreements. These questions predominate because, in each case, "[t]he challenged practice is a standardized one applied on a routine basis to all customers" by the bank. See Gutierrez v. Wells Fargo Bank, No. C 07-5923 WHA, 2008 WL 4279550, *17 (N.D. Cal. Sept. 11, 2008); In re Checking Account Overdraft Litig., 275 F.R.D. 666, 676 (S.D. Fl. 2011) ("Here, irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [the] Bank's alleged scheme . . . . Any analysis of this scheme will depend on evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner.") (internal quotations omitted); see also In re Med. Capital Secs. Litig., 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) ("Courts routinely certify class actions involving breaches of form contracts.").

In sum, the record is sufficient to support conditional certification of the proposed Settlement Class under Rule 23(a) and (b)(3).

### C.  CLASS NOTICE

Where a proposed settlement has been reached by the parties, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal."

Fed. R. Civ. P. 23(e)(1).[4]  Notice must generally describe the terms of the Settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.  Mendoza v. United States, 623 F.2d 1338, 1352 (9th Cir. 1980).  In order to satisfy due process considerations, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994).

Here, the Settlement specifies that Aurora is to provide a list of class members to Plaintiffs' counsel within ten days of the Court's preliminary approval of the settlement, and that notice will be disseminated by first class mail and email within thirty days.  See Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 963 (3d Cir. 1983) (noting that notice by publication and mail has been found to be "clearly adequate").  In addition, the Class Notice adequately describes the nature of the action, summarizes the terms of the settlement, identifies the different classes and provides instruction on how to opt out and object, and the proposed fees and expenses to be paid to Plaintiffs' counsel and the claims administrator, among others.  The Court therefore concludes that the proposed Class Notice is sufficient.

### III. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement is GRANTED, as follows:

---

[4] For classes to be certified under Rule 23(b)(3), the Court must direct to class members "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Id. 23(c)(2)(B).  The notice must "clearly and concisely state in plain, easily understood language":  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  Id.

1. The Court preliminarily approves the Settlement and the terms set forth therein, subject to further consideration at the Final Approval Hearing described below.

2. A Final Approval Hearing shall be held before this Court on **January 13, 2015, at 1:00 p.m.** in Courtroom 210 at the United States District Court, located at 1300 Clay Street, 2nd floor, Oakland, CA 94612, to determine whether to certify the Settlement Class; whether the proposed settlement is fair, reasonable and adequate and should be approved by the Court; whether a final judgment should be entered herein; whether the proposed plan of distribution of the Settlement Fund should be approved; and to determine the amount of fees, expenses and incentive awards that should be awarded to Class Counsel and the Class representatives. The Court may approve the settlement, with such modifications as may be agreed to by the settling parties, if appropriate, without further notice to the Settlement Class, in which event, the Court may adjourn or continue the Final Approval Hearing without further notice to the members of the Settlement Class.

3. Pursuant to Rule 23, the Court hereby preliminarily certifies, solely for purposes of effectuating this proposed Settlement, the following classes: (1) the "Rosenthal Act Settlement Class," which consists of "all California residential mortgage customers to whom Aurora sent the 'Workout Agreement,' later called the 'Foreclosure Alternative Agreement,' or substantially identical correspondence on or after June 8, 2009"; and (2) the "Restitution Settlement Class," which consists of "All California residential mortgage customers to whom Aurora sent the 'Workout Agreement,' later called the 'Foreclosure Alternative Agreement,' or substantially identical correspondence on or after June 8, 2006, who made the trial payments required by their final Workout Agreement, did not thereafter enter into a repayment plan or HAMP trial payment plan, were not thereafter offered a loan modification by Aurora, and were thereafter foreclosed upon." The Court also hereby preliminarily certifies the Excess Payment Subclass which consists of: "All members of the Restitution Settlement Class who made additional payments to Aurora after the term of the Workout Agreement had expired."

5. Pursuant to the Settlement and the parties' request, the Protective Order previously entered in this matter, Dkt. 85, 87, is hereby modified to add the Claims Administrator as a person to whom "Confidential" and "Highly Confidential" materials can be disclosed, provided that the Claims Administrator reads the Protective Order and agrees in writing to be bound by it per the form attached as Exhibit A to the Protective Order.

6. Pursuant to the Settlement Agreement, for purposes of effectuating this proposed settlement, within ten (10) business days after the Preliminary Approval Date, Aurora shall provide the Claims Administrator and Co-Lead Counsel with a final Class List in electronic format, to the extent reasonably available, which shall supplement the information already provided to Plaintiffs and include for Settlement Class Members the information described in Paragraph 21 of the Settlement Agreement. The Rosenthal Act Settlement Class shall be limited to those persons identified on the Class List and fitting the Rosenthal Act Settlement Class definition above, including such persons who provide information under the terms of the Settlement Agreement that causes them to be included as members of the Rosenthal Act Settlement Class. The Restitution Settlement Class shall be limited to those persons identified on the Restitution Settlement Class List and fitting the Restitution Settlement Class definition above, including such persons who provide payment information under the terms of Settlement Agreement that causes them to be included as members of the Restitution Settlement Class. The Court preliminarily finds that, for purposes of effectuating this settlement only, that the Settlement Classes meet the Rule 23 requirements for a settlement class.

7. For purposes of effectuating this proposed settlement only, the Court preliminarily designates the Plaintiffs as the class representatives and appoints Hagens Berman Sobol Shapiro LLP, Law Office of Andrew Oldham, Abatahi Law Firm, and Richardson, Patrick, Westbrook & Brickman, LLC as Class Counsel.

8. The Court approves the form and manner of class notice set forth in the Settlement Agreement and exhibits thereto, as further delineated herein, and finds that said

notice meets the requirements of Rule 23 and due process, is the best notice practicable under the circumstances, and shall constitute sufficient notice to all persons entitled thereto.

9.     The Court hereby appoints Gilardi & Co., LLC as the "Settlement Administrator" to supervise and administer the notice procedure as well as the processing of claims.

10.     Prior to the Final Approval Hearing, the notice and claims process shall be administered as follows:

a.     By no later than 40 days after preliminary approval, the Settlement Administrator shall cause the notice and claim form, substantially in the forms annexed to the Settlement Agreement, to be sent by U.S. mail and electronic mail (where available) to each member of the Settlement Class identified on the Class List described in paragraph 4 above, to their last known addresses as updated by a query of the United States Postal Service change of address database.

b.     By no later than 40 days after preliminary approval, the Settlement Administrator shall publish the settlement website described in the notice form, which shall provide the information contained in the notice and relevant documents for download, including the Settlement Agreement and this Order granting preliminary approval.

c.     Any person who wishes to exclude themselves from the Settlement Class must do so by written request to the Settlement Administrator postmarked no later than 100 days after preliminary approval. All persons who submit valid and timely requests for exclusion in the manner set forth in the notice shall have no rights under the Settlement Agreement, shall not share in the distribution of the Settlement Fund, and shall not be bound by any final judgment entered in this matter.

d.     By no later than 105 days after preliminary approval, the Settlement Administrator shall prepare and deliver to counsel for the parties lists identifying the

members of the Settlement Class as set forth on the Class List and of said persons who timely requested exclusion from the Settlement Class (the "Opt-outs").

e. In the event that number of Opt-outs exceeds 7% of the total number of Settlement Class members, Aurora may exercise its termination rights under paragraph 46 of the Settlement Agreement, including obtaining a continuance of the Final Approval Hearing as it deems necessary to make its determination as to whether it elects to exercise that option.

11. By no later than 14 days prior to Final Approval Hearing, Class Counsel shall file motions for final approval of the settlement, attorneys' fees, costs and incentive awards for the class representatives, and all supporting documentation and papers necessary to enter a final judgment in this matter.

12. Any member of the Settlement Class may appear at the Final Approval Hearing as "objectors" and object to the settlement or any aspect thereof, including the applications for awards of Class Counsel fees and costs or for service awards to the representative plaintiffs; provided, however, that no appearance or objection will be allowed unless the objector files and serves the objection in writing in the manner prescribed in the notice by no later than 100 days after preliminary approval. Any members of the Settlement Class who do not timely make their objections in the proscribed manner shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed settlement, the award of attorneys' fees and expenses to Class Counsel, or any other aspect of this settlement, unless otherwise ordered by the Court.

13. All expenses incurred in connection with the notice and claims process shall be paid for as set forth in Settlement Agreement.

14. This Order, the Settlement Agreement, and any other incident of this preliminary approval proceeding shall never be offered or construed as an admission or concession by Plaintiffs or Defendant of the truth or falsity of any of the allegations in the litigation, or of any liability, fault or wrongdoing of any kind.

15. Pending the Final Approval Hearing, this Action is stayed for all purposes, unless otherwise ordered by the Court.

IT IS SO ORDERED.

Dated: 9/5/14

*signature*
SAUNDRA BROWN ARMSTRONG
United States District Judge